**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-60171

TRINITY INDUSTRIES, INC.

Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; ALEXIS M.
HERMAN, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

Petition for Review of an Order of the
Occupational Safety and Health Review Commission

March 23, 2000

Before REYNALDO G. GARZA, JONES, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

BACKGROUND

Trinity Industries operates plants that manufacture and repair railcars. Trinity also "lines" new "hopper" railcars by spraying their insides with a chemical coating designed to seal and protect the interior of a railcar. Absent proper ventilation, this lining process has the potential to create a hazardous atmosphere inside the railcar. A hazardous atmosphere is defined as one that is oxygen deficient or which contains toxic levels of a hazardous gas or dust of flammable vapors in excess of ten percent of the lower flammable limit (LFL) or lower explosive limit (LEL). *See* 29 CFR 1910.146(d). At issue in this case are citations issued against Trinity based on an OSHA inspector's finding that the atmosphere inside at least one of Trinity's railcars exceeded ten percent of the LEL during the lining process.

Trinity designed a ventilation system to prevent the build up of a hazardous atmosphere,

consisting of a ventilation duct on top of the railcar which pulls air out of the railcar, thus forcing fresh air to be drawn into the railcar through its bottom opening. The entire process exchanges all of the air in the railcar with air from outside the railcar every minute.

Railcars are "confined spaces" per OSHA regulations. OSHA's standard for employee entry into confined spaces governs work activities in confined spaces. *See* 29 C.F.R. § 1910.146. A confined space is "permit required" if it contains, or has the potential to contain, a hazardous atmosphere. Permit required spaces are generally governed by § 1910.146(d), which requires numerous compliance procedures. Subpart (c), however, allows alternative methods of compliance if the confined space only contains a "potentially hazardous atmosphere," and if continuous ventilation alone is sufficient to maintain safe conditions. According to Trinity, if subpart (c) applies, the employer need not comply with the costly and time consuming requirements set forth in subpart (d).

Over a ten year period ending with his departure from the company, Trinity's former corporate and environmental director, Jerry Riddles, tested the inside of more than a thousand railcars during the actual lining operation while the cars were ventilated. The levels of combustible and toxic vapors inside the railcars were tested with direct reading instruments placed inside the railcars. During this testing, Riddles never received a reading above ten percent of the LEL no matter which lining material was used. Based on this testing, Trinity concluded that its railcar lining operation was governed by subpart (c) rather than by subpart (d), and that its ventilation system maintained safe conditions inside the railcars during the lining operations.

The alleged violation in this case occurred at a plant in Bessemer, Alabama. Riddles tested about sixty cars at this plant as part of his ten year program. The Bessemer plant safety directors also tested the cars periodically and found no hazardous atmosphere inside the cars during the lining process. However, during a subsequent OSHA inspection, an inspector detected levels of flammable vapor at 24-26% percent of the LEL. Notably, all of his measurements were taken from outside the railcar. Apparently, the reading instruments were placed at the opening at

the bottom of the railcar where outside air is pulled in, presumably measuring the air being pulled into the car rather than directly measuring the air in the car. The inspector conceded that these readings did not tell him "the actual concentrations inside the hopper car." Trinity suggested that open paint cans in the area may have been the source for the high readings outside of the railcar, but denied that the readings were evidence of concentrations inside the railcar.

Based on these readings from outside the railcar, the Secretary of Labor found that there was a hazardous atmosphere inside the railcars despite Trinity's ventilation system and thus the railcars were governed by subpart (d). Trinity was cited for, *inter alia*, failure to comply with subpart (d).

Trinity appealed the citation to an Administrative Law Judge (ALJ) who noted that there was "no evidence to dispute Trinity's claim that, under usual conditions, the ventilation system maintained flammable vapors below ten percent of the LEL," but concluded that the OSHA test established the existence of a hazardous atmosphere at the time of the inspection and therefore that the lining operation did not qualify for the subpart(c) exception.

Trinity then petitioned the Commission for review on the grounds that the ALJ's decision was inconsistent and illogical, and that the ALJ had affirmed the confined space citation without requiring the secretary to prove that Trinity knew or should have known of the violations. On review, the Commission held that the inspector's tests showed at least a "potential" for the atmosphere inside the cars to be hazardous when ventilated. The Commission also held that Trinity was not eligible for the subpart (c) exception and affirmed the citations as violations of subpart (d). Notably, the Commission declined to consider the knowledge issue, finding that it need not be addressed since it was not raised in the petition for review. On appeal, Trinity argues that even if there was a hazardous atmosphere inside the railcar (or the potential for one), there is no basis for finding that Trinity knew or should have known of this condition and thus the citations must be dismissed.

DISCUSSION

3

I.    Was the knowledge issue preserved for this court's review?

Knowledge is a fundamental element of the Secretary of Labor's burden of proof for establishing a violation of OSHA regulations. *See Carlisle Equipment Co. v. Secretary of Labor,* 24 F.3d 790, 792-93 (6th Cir. 1994). However, issues not properly raised before the Commission may not be considered by this court. *See Cleveland Consolidated, Inc. v. OSHRC*, 649 F.2d 1160, 1164-65 (5th Cir. Unit B 1981); *McGowan v. Marshall*, 604 F.2d 885, 890-91 (5th Cir. 1979). The Secretary argues that because Trinity failed to raise the issue of employer knowledge in its petition for review, and the Commission properly declined to consider it, this court is foreclosed from doing so.

Though Trinity did not specifically raise the issue of knowledge in its petition for review before the Commission, it did raise it in its brief to the Commission. The Commission's decision noted that while it had the discretion to consider the knowledge issue, it would normally only consider issues stated in the petition for review or in a later order. We find that the knowledge issue was properly preserved for our review in this case where the Commission was clearly aware of the knowledge issue and where the knowledge issue constituted a fundamental element of the Secretary's burden of proof. To hold otherwise would place form above purpose, especially considering that the knowledge issue is a fundamental element of the secretary's burden of proof. The rationale behind not allowing this court to review issues not raised before the Commission is to give the Commission a chance to pass on issues before this court reviews the administrative process. *See Brown & Root v. OSHRC and Donovan,* 659 F.2d 1291, 1293-94 (5th Cir. 1981). In this case, the Commission had a chance to pass on the knowledge issue. *See id.* (holding that where an issue is evident from the administrative record, Court of Appeals, in reviewing an order of the Occupational Safety and Health Review Commission, will retain jurisdiction to consider the issue on appeal notwithstanding the failure to specifically address issue in petition for review.)

II.   The knowledge element

Since the Commission declined to address the issue of knowledge, we will conduct *de*

*novo* review of whether the evidence of knowledge is sufficient to sustain the violation. To prove the knowledge element of its burden, the Secretary must show that the employer knew of, or with exercise of reasonable diligence could have known of the non-complying condition. *See Secretary of Labor v. Milliken & Co.*, 14 OSHC 2079, 2083 (Rev. Comm. 1991), *aff'd,* 947 F.2d 1483 (11th Cir. 1991). When the Secretary alleges that a contaminant is present in impermissible levels, but the employer shows that it had made measurements and determined that the concentration was not excessive, the burden is on the Secretary to show that the employer's failure to discover the excessive concentration resulted from a failure to exercise reasonable diligence. *Id.* Thus, in this case, the Secretary must show that Trinity knew or should have known that its ventilation was not maintaining an atmosphere below ten percent of the LEL during the lining operation.

Trinity argues that the uncontroverted evidence consists of sworn testimony describing more than a thousand tests which demonstrated that its ventilation system was maintaining an atmosphere below ten percent of LEL during the lining operation. These tests were explicitly credited by the ALJ. The Secretary responds that the OHSA inspection demonstrates that Trinity was out of compliance on the day in question. Additionally, we note that the Secretary alleges that there are issues over the documentation of the tests on which Trinity relied, worker imperfection in maintaining the ventilation system, and general sloppiness, all of which are alleged to demonstrate a lack of reasonable diligence on Trinity's part. However, the most thorough evidence of the vapor levels remains the extensive testing conducted by Trinity as described by sworn testimony of the railroad safety experts who conducted the tests. On the basis of this evidence, we find that the Secretary failed in its burden of proving that Trinity knew or should have known that the levels in the railcars were improper. Therefore, we VACATE the citations issued against Trinity.[1]

---

[1] We note that the parties briefed the issue whether Trinity's rail car lining operation qualifies for the "alternative procedures" of subpart (c). However, that is an issue for another day. The citations at issue here are based on circumstances – the presence of a hazardous environment

CONCLUSION

The citations issued against Trinity by the Secretary of Labor are hereby VACATED.

---

inside the railcars – which would violate the confined space entry standards of the OSHA regulations regardless of whether the "alternative procedures" apply. The citations must be vacated regardless of whether those portions of subpart (c) apply because the record shows that Trinity did not have reason to know there was a hazardous environment in their rail cars during the lining operation.