IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60814
_____


_____


SOUTHWESTERN BELL TELEPHONE COMPANY,

Petitioner

v.

_____

Elaine CHAO, Secretary of Labor,
United States Department of Labor, and
Occupational Safety and Health Review Commission,

Respondents

_____

Appeal from the Occupational Safety and Health Review Commission
No. 98-1748
_____
November 15, 2001

Before KING, Chief Judge, and DUHÉ and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this safety regulation violation case, the defendant,
Southwestern Bell Telephone Company, appeals the orders of the
Occupational Safety and Health Review Commission finding three

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violations of regulations and assessing penalties.  For the following reasons, the orders are AFFIRMED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, the Occupational Safety and Health Administration ("OSHA") inspected a Southwestern Bell Telephone Company ("Southwestern Bell") excavation work site in Texas, prompting the Secretary of Labor ("Secretary") to cite the company for safety violations pursuant to three OSHA regulations: 29 C.F.R. §§ 1926.651(k)(1), 1926.652(a)(1), and 1926.1053(b)(1) (1995),[1]

_____

[1]  § 1926.651(k)(1) reads as follows:

(1) Daily inspections of excavations, the adjacent areas, and protective systems shall be made by a competent person for evidence of a situation that could result in possible cave-ins, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions.  An inspection shall be conducted by the competent person prior to the start of work and as needed throughout the shift.  Inspections shall also be made after every rainstorm or other hazard increasing occurrence.  These inspections are only required when employee exposure can be reasonably anticipated.

§ 1926.652(a)(1) reads, in relevant part, as follows:

(1) Each employee in an excavation shall be protected from cave-ins by an adequate protective system ... except when .... (I) Excavations are made entirely in stable rock; or (ii) Excavations are less than 5 feet (1.52m)in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

§ 1926.1053(b)(1) reads as follows:

(1) When portable ladders are used for access to an upper landing surface, the ladder side rails shall

2

promulgated under the Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. §§ 651 et seq. (1994).  The Secretary issued his citation based on three types of violations: (1) failure to adequately inspect the work site; (2) failure to protect employees from cave-ins (shoring); and (3) failure to extend a ladder sufficiently above the excavation surface.  The Secretary concluded that all three of these violations were "serious" for the purposes of the Act, meaning the hazards they produced could result in serious physical harm or death, and proposed civil penalties totaling $ 4950 pursuant to 29 U.S.C. § 666(j).

Southwestern Bell contested the violations and penalties to the Occupational Safety and Health Review Commission (the "Commission"), which then conducted a Commission hearing.  At that hearing, an administrative law judge ("ALJ") held that Southwestern Bell did in fact violate the three safety regulations.  He reduced the ladder violation penalty, however, and assessed fines totaling $ 4200.  The Commission then

---

extend at least 3 feet (.9m) above the upper landing surface to which the ladder is used to gain access; or, when such an extension is not possible because of the ladder's length, then the ladder shall be secured at its top to a rigid support that will not deflect, and a grasping device, such as a grabrail, shall be provided to assist employees in mounting and dismounting the ladder.  In no case shall the extension be such that ladder deflection under a load would, by itself, cause the ladder to slip off its support.

3

conducted an additional "directed" review of the shoring and inspection violations and affirmed the ALJ's findings and penalties.[2]  Southwestern Bell now timely petitions this court for review of the Commission's final order and the $ 4200 in penalties.  This court has jurisdiction to review the final orders of the Commission.  See 29 U.S.C. § 660(a).

The following chain of events regarding the excavation and its hazardous conditions are uncontested by the parties. Southwestern Bell hired an excavator to dig a trench.  The trench, at completion, was more than five feet deep.  Two non-supervisory Southwestern Bell workers, Mr. Santana and Mr. Garza, were to work in the trench.  A supervisor, Ms. Beck, was at the trench site initially but did not witness its final completion. Upon completion of the trench, Santana called Beck to warn that the trench was deeper than expected and that it would need shoring or reinforcement, according to the excavator.  Supervisor Beck told the workers to keep working and did not return to look at the trench.  The trench was not shored at any time by Southwestern Bell.  During work in the trench, a ladder was placed extending only 1.3 to 1.4 feet above the trench surface. There is no evidence that any accidents befell Santana or Garza,

---

[2]  The ALJ's findings as to the ladder violation and its penalty were not reviewed additionally by the Commission but became the final order of the Commission pursuant to 29 U.S.C. § 661(j).

the two employees exposed to the trench and ladder conditions during the single-day excavation.

## II. STANDARD OF REVIEW

We defer to the Commission's findings of fact as "conclusive" to the degree that there is "substantial evidence on the record considered as a whole" to support those findings, even where we could reach a different result de novo.  29 U.S.C. § 660(a).  See also Kelly Springfield Tire Co., Inc. v. Donovan, 729 F.2d 317, 321 (5th Cir. 1984).  We defer to the Commission's conclusions of law, including interpretation of any relevant statutory provisions, to the degree that they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".  5 U.S.C. § 706(2)(A) (1996).  We review the Commission's interpretation of regulations promulgated under the Act deferentially unless such interpretation is "unreasonable or inconsistent with the regulation's purpose".  RSR Corp. v. Brock, 764 F.2d 355, 365 (5th Cir. 1985) (internal quotation and citation omitted).

## III. DISCUSSION

### A. Competent Person to Inspect

To establish a prima facie case of regulatory violation, the Secretary must prove that (1) the standard applies; (2) the employer failed to comply; (3) employees had access to the condition causing the violation; and (4) the employer had actual

5

or constructive knowledge of the violation. <u>See, e.g.</u>, <u>N.Y. State Elec. & Gas Corp. v. Sec'y of Labor</u>, 88 F.3d 98, 105 (2d Cir. 1996). Southwestern Bell contends that it complied with the inspection regulation, and thus committed no violation, because a competent person inspected the excavation site. Inspection of an excavation, under § 1926.651(k)(1), requires that a "competent person" inspect the excavation site "prior to the start of work and as needed throughout the shift, as well as after rainfall or other hazard increasing event." § 1926.651(k)(1). Another regulation further defines a competent person as "one who is capable of identifying existing and predictable hazards in the surroundings, or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.650 (1995). The Commission interpreted those regulations together plainly to require that a competent person must have sufficient authority to remedy violations. The Commission further held that the two non-supervisory workers, Garza and Santana, did not in fact have this authority. The Commission reasoned that, although Santana and Garza "'shared responsibility' for safety at the work site, they lacked the requisite authority to abate hazards", and thus were not competent persons to inspect the specific trench site in the instant case. Order of the Occupational Safety and Health Review Commission ("Comm'n Order"), at 4-5 (Sept 27, 2000).

6

In so doing, the Commission rejected Southwestern Bell's contention that evidence, including the testimony of a Southwestern Bell regional manager that employees could decline unsafe work individually, indicated that Santana and Garza had sufficient authority to remedy exposure to work hazards. The ALJ likewise considered and rejected evidence regarding Santana's and Garza's exposure to a training video, which merely asserted that it was designed to ensure that all Southwestern Bell employees were "competent" on safety issues. The Commission took note of the fact that one of the workers called his supervisor, Beck, to report to her that an excavator indicated that the trench would need shoring because it exceeded five feet. The Commission further noted that when Beck then ordered the workers into the trench nonetheless, the workers complied, despite the fact that the trench was never shored. The Commission concluded that if the workers had the requisite authority to abate hazards, they would not have simply returned to work in the potentially unsafe condition. The Commission then confirmed what Southwestern Bell had already conceded, that as the workers' supervisor, Beck did in fact have such authority, and was thus competent to inspect. See Comm'n Order, at 4-5.

It is true that the Commission has found a non-supervisory worker to be of competent status. See, e.g., Sec'y of Labor v. Rawson Contractors, Inc., No. 99-0018, 2000 WL 557314, at *6 (O.S.H.R.C. May 8, 2000) (finding hourly, non-management employee

7

competent to inspect excavation where employee had "twenty years experience in trenching and excavation operations"). However, the Commission also frequently disqualifies even supervisory workers, such as foremen, from competent status because the Commission will not take authority as a per se qualification to inspect, but interprets that a "competent person" requires something more in the way of special training as to the safety requirements of the task at hand. See, e.g., Sec'y of Labor v. Westar Mech., Inc., Nos. 97-0226, 97-0227, 2000 WL 1182858, at *1, 6-7 (O.S.H.R.C. Aug. 14, 2000) (finding neither president and owner, nor foreman of company, competent absent their "specific training in", or knowledge about, "soils analysis" and the "use of protective systems"); Sec'y of Labor v. Bruschi Bros., Inc., No. 96-0681, 1997 WL 580798, at *5 (O.S.H.R.C. Sept. 17, 1997) (denying "foreman" competent person status to test a fifteen-foot trench). Considering the Commission's past interpretations of what comprises a competent person for the purpose of inspections, the Commission's determination here that a competent person required authority to remedy hazards is not unreasonable. Nor can that interpretation be said to be contrary to the Act's purpose of protecting workers from hazards at work sites. Moreover, the Commission's finding that neither Santana nor Garza had the requisite authority to abate hazards, and therefore could not conduct inspections as competent persons, is supported by substantial evidence in the record as a whole.

### B. Inadequate Inspection

The Commission held that Beck did not in fact perform an adequate inspection at the work site, and thus that the company violated § 1926.651(k)(1). The Commission interpreted the regulation by its plain meaning. That regulation requires daily inspection of work sites "prior to the start of work and as needed throughout the shift", including after every "hazard increasing occurrence". § 1926.651(k)(1). The Commission concluded from the regulation's plain meaning that Beck should have inspected the trench after completion and prior to the workers entering it. See Comm'n Order, at 4-5. Such plain meaning interpretation is not unreasonable, arbitrary, or contrary to the safety purposes of the Act.

The Commission then found that, although Beck had been at the trench site originally, she left the work site before the trench was completed, and thus could not have inspected it adequately to satisfy the plain requirement of § 1926.651(k)(1).

The Commission further noted that the call made by Santana to Beck after she had left the work site, in which he relayed the excavator's warning regarding the need for shoring, indicated that Beck knew the trench required an inspection upon completion and that her presence at the trench at any prior point was insufficient. These findings reflect and affirm those of the ALJ. See Comm'n Order, at 4-5. The ALJ held that "Beck did not

9

see and, therefore, could not have inspected the finished trench prior to the start of work.  The violation is established." Order of Administrative Law Judge ("ALJ Order"), at 3 (Aug. 20, 1999).

Southwestern Bell contends that Beck's attendance at the site "inches" before the trench was completed, as well as Beck's observance of a pipe Beck felt provided adequate support under the circumstances, constitutes sufficient inspection to satisfy § 1926.651(k)(1).  The Commission disagreed based on its reasonable plain interpretation of the regulation to require inspection after completion of the trench.  Substantial evidence in the record indicates Beck failed to inspect the trench after completion.  Moreover, evidence indicates Beck ignored an intervening alert that the trench was potentially hazardous without shoring.  The Commission's decision that the inspection violation occurred was based on substantial evidence.

## C. Prima Facie Knowledge of the Serious Violations; Southwestern Bell's Affirmative Defense of Employee Misconduct

Southwestern Bell contends that the Commission erred in (1) finding that the Secretary had properly imputed knowledge of the violations to Southwestern Bell as part of its prima facie case; and (2) that the Commission erred in finding that Southwestern Bell had not made out an affirmative defense of employee misconduct.  When there has been a violation of any specific OSHA regulation, such as the three violations in the instant case,

10

such violation constitutes violation of the "special duty clause" of the Act, 29 U.S.C. § 654(a)(2).[3]  In order to impart liability to an employer for a violation of the special duty clause, the Secretary must prove that an employer had knowledge of the violation as part of its prima facie case.  See, e.g., Trinity Indus. v. Occupational Safety and Health Review Comm'n, 206 F.3d 539, 542 (5th Cir. 2000) ("Knowledge is a fundamental element of the Secretary of Labor's burden of proof for establishing a violation of OSHA regulations.").  To prove the knowledge element, "the Secretary must show that the employer knew of, or with exercise of reasonable diligence could have known of the non-complying condition."  Id.  In order to determine whether such knowledge exists, the Commission and courts of appeals have looked to evidence of the employer's "safety program", as did the Commission in this case.  Such evidence is used to determine if the employer's reasonable diligence in communicating safety rules and regulations and the importance of compliance to its employees, as well as in diligently disciplining employees for violations, forecloses imputation of knowledge of an individual violation to the employer.  See, e.g, Horne Plumbing & Heating

---

[3]    The special duty clause requires that "[e]ach employer ... shall comply with occupational safety and health standards promulgated under this chapter."  29 U.S.C. § 654(a)(2).  This is in contrast to the "general duty clause," which requires that every employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [its] employees."  29 U.S.C § 654(a)(1).

11

Co. v. Occupational Safety & Health Review Comm'n, 528 F.2d 564, 569-71 (5th Cir. 1976) (examining an employer's safety program and finding that the employer's program was adequately diligent to prevent imputation of knowledge of a violation to the employer).  Analysis of an employer's safety program to determine whether an employer had the requisite knowledge typically includes examination of the following types of evidence: the employer's instruction of employees regarding safety regulations, employer safety policies, and compliance procedures via its dissemination of safety manuals and holding of training sessions; the employer's monitoring of safety rule compliance; and the employer's history of sanctioning of workers that fail to comply with regulations and policies.  See, e.g., Horne Plumbing, 528 F.2d at 569 (quoting Nat'l Realty & Constr. Co., Inc. v. Occupational Safety & Health Review Comm'n, 489 F.2d 1257, 1266 (D.C. Cir. 1973)) (internal quotation omitted).

Southwestern Bell's claim that the Commission improperly shifted the burden to the employer regarding proof of adequacy of its safety program as a means of relieving the employer from liability derives from the fact that the Commission and courts of appeals, including this one, have recognized an affirmative defense of employee misconduct available to employers.  See, e.g., H.B. Zachry Co. v. Occupational Safety & Health Review Comm'n, 638 F.2d 812, 818-19 (5th Cir. Unit A Mar. 1981) (applying the affirmative defense and affirming Commission

12

finding that employer had failed to make it out).   The employee

misconduct defense is typically established by an employer

bringing forth the same evidence regarding the adequacy of its

safety program, such as evidence of training sessions attended by

an employee, that is examined to determine whether the Secretary

has proven knowledge as part of its prima facie case.[4]  N.Y.

State Elec., 88 F.3d at 106-110 ("We note that under the

Commission's precedent, ... the Secretary's prima facie case and

the employer's unpreventable conduct defense both involve an

identical issue:  whether the employer had an adequate safety

policy.").  Southwestern Bell claims, therefore, that by

requiring it to come forth with evidence regarding the adequacy

of its safety program, the Commission erred by shifting the

burden to Southwestern Bell and requiring it to first prove its

affirmative defense where, instead, the Secretary should have

been required to bring forth the same types of safety program

evidence to establish, as part of the case in chief, that

Southwestern Bell had knowledge of violations due to a lack of

safety diligence.  However, on appeal, in determining whether the

Commission erred in finding that the Secretary properly

---

[4]  Four elements the employer must show to establish the
employee misconduct defense have been recognized by the
Commission and courts of appeals, including that the employer:
(1) established a work rule to prevent the violative conduct; (2)
adequately communicated this rule to its employees; (3) took
steps to discover non-compliance; and (4) effectively enforced
safety rules when violations were discovered.  E.g., N.Y. State
Elec., 88 F.3d at 106 (citations omitted).

13

established Southwestern Bell's knowledge of the safety violations as part of its prima facie case, or in determining whether Southwestern Bell failed to make out its affirmative defense of employee misconduct, this court is faced with a single inquiry. Because this court disposes of both issues by examining the Commission's factual finding that Southwestern Bell had an inadequate safety program under the circumstances, see id., this court must only determine whether that finding regarding the inadequacy of the safety program is supported by substantial evidence in the record as a whole.[5]

The Commission held that, under established Commission precedent, it would not consider evidence establishing that Southwestern Bell maintained a safety program adequate only in "general" sufficient to find that Southwestern Bell lacked imputed knowledge of the violations. Comm'n Order, at 6-7, n.4 (citing Sec'y of Labor v. Hamilton Fixture, No. 88-1720, 1993 WL 127949 (O.S.H.R.C. Apr. 20, 1993)). Rather, the Commission determined that it was appropriate under the circumstances to require that Southwestern Bell should have effectively communicated and enforced the inspection and trenching safety

---

[5] We note that while the ALJ considered safety program evidence under an affirmative employee misconduct defense, the Commission only addressed such evidence as dispositive of prima facie imputed knowledge. Both found the employer's safety program, especially with respect to communication to Beck specifically regarding trenching hazards, inadequate under the circumstances. See ALJ Order, at 4; Comm'n Order, at 5-8.

14

rules specifically at issue in this case more diligently. See id.
This court has similarly interpreted that the level of adequacy
the Commission may require of a safety program to relieve an
employer of liability for a serious safety violation can include
the requirement that "all feasible steps were taken [by an
employer] to avoid the occurrence of the hazard". H.B. Zachry,
638 F.2d at 818-20. This court has declined, therefore, in the
context of a claimed affirmative employee misconduct defense, to
relieve an employer of liability where a general safety program
exhibited deficiencies in communication regarding specific
violations at issue, or as to the employee who committed the
violation. Id. This court has only limited the level of
adequacy that might be required in a determination of whether the
adequacy of a safety program might permit a company to escape
liability by ruling that safety measures demanded must not be
unnecessarily burdensome or wholly infeasible. See Horne
Plumbing, 528 F.2d at 569-71 (finding requirement that sole
proprietor would need to personally supervise foremen at every
moment of an excavation infeasible, where the proprietor had an
extensive history of training foreman and of supplying shoring
material to excavations as a matter of course, but acknowledging
that "close supervision" can be warranted in some, albeit
relatively few, cases).

In assessing Southwestern Bell's safety program, the
Commission noted testimony by the OSHA compliance officer that he

15

considered Southwestern Bell's safety program "adequate" in general. Comm'n Order, at 5. The Commission noted evidence that one of the trench workers was given annual training regarding excavation and trenching. It noted testimony that work site supervisors were required to conduct "monthly safety meetings" for non-supervisory employees and required to observe each worker twice per month to evaluate performance. Id. at 5-6. The Commission further noted evidence that a regional safety manager visited the supervisors to review safety records to make sure that the supervisors were complying "'with the plan, conducting their safety meetings, conducting their observations '", as well as that the safety manager conducted "'observations in the field with the technicians' (non-supervisory crew members such as Santana and Garza)." Comm'n Order, at 6. The Commission then found that, "[a]lthough [Southwestern Bell] had a safety program and conducted site visits, there is no evidence that either the program or the visits pertained to enforcing the competent persons' obligation to perform trench inspections." Id. The Commission further held that, under the circumstances, Southwestern Bell had not taken "reasonable monitoring steps regarding its site supervisor's compliance with protective system requirements" as to shoring. Id. at 9. The Commission thus held that the employer had not engaged in sufficient safety diligence to prevent the violations at issue. The Commission concluded that knowledge could be imputed to the company and the company

16

should be held liable for the three serious violations.  These findings are based on substantial evidence in the record as a whole.

Southwestern Bell relies on two cases that it contends are controlling to argue that it should not be liable.  In those cases, the Commission found a safety program adequate to allow an employer to escape liability based on the program's general adequacy.  See Sec'y of Labor v. Brand Scaffold Builders, No. 00-1331, 2001 WL 118562, at *4-5 (O.S.H.R.C. Feb. 5, 2001) (finding a safety program sufficiently adequate to relieve an employer of liability based on the existence of safety manuals, training sessions, monthly conferences, and on evidence that the employee who violated the rule attended the training sessions); Sec'y of Labor v. Field & Assocs., Inc., No. 99-1951 , 2001 WL 138962, at *2-5 (O.S.H.R.C. Feb. 12,  2001) (finding an adequate safety program based on rules communicated via written safety policies, the existence of a video on fall protection, safety meetings, and random safety inspections conducted by the employer).  These two cases establish, however, only that the Commission, in this case, could have reasonably considered evidence of Southwestern Bell's general safety program and periodic monitoring efforts adequate under the circumstances.

The Commission, however, disagreed.  The Commission's interpretation that the adequacy of a safety program demanded evidence of more effective monitoring of the rules in question

17

and their communication to Beck is not arbitrary or contrary to the Act's purpose to prevent violations.  This is especially true in light of this court's holdings in H.B. Zachry and Horne Plumbing, indicating that the Commission may find deficiencies in a safety program specific to the violations, and that it may require evidence of reasonably heightened monitoring as part of its determination that the company could not escape liability for its violations.  The Commission did not ignore Southwestern Bell's evidence regarding its general safety meetings, training sessions, or periodic site visits.  The Commission chose to focus instead on the need for more aggressive monitoring.  Based on the absence of such monitoring, along with the fact of Beck's violation of safety regulations, the Commission determined that the record as a whole failed to indicate a safety program adequately diligent in communicating and enforcing rules regarding trench inspection and shoring, and thus that knowledge should be imputed to the company and the company could not escape liability.  This decision is supported by substantial evidence in the record as a whole.  The Commission's decision that Southwestern Bell's safety program was inadequate with respect to ensuring proper trench inspection, shoring, and ladder placement is likewise supported by substantial evidence in the record.

### D.  Serious Ladder Violation

Southwestern Bell contends that the ladder violation, under § 1926.1053(b)(1), was not "serious", but "de minimis" as a matter of law, because it was unlikely to occur. Southwestern Bell contends, therefore, that the Commission erred in assessing a $ 600 penalty for that violation because no penalty should have been assessed, as is customary for a de minimis violation. This court defers to the Commission's severity classifications to the extent such classifications of violations are "supported by substantial evidence in the record as a whole, even if the court could reach a different result de novo." Donovan v. Daniel Constr. Co., 692 F.2d 818, 820 (5th Cir. 1982).

The Commission based its finding that the ladder violation was serious on the fact that the result of any injury could result in a broken bone, or maybe even death. The Commission expressly characterized a broken bone as a "serious physical harm". ALJ Order, at 6. Courts of appeals, including this one, have held that sufficient nexus to establish a serious violation does not require establishing that actual physical harm occurred, but only that serious physical harm could possibly result, even when it is very unlikely that the injury actually would occur. See, e.g., Turner Communications Corp. v. Occupational Safety & Health Review Comm'n, 612 F.2d 941, 944-45 (5th Cir. 1980). Thus, the seriousness of a violation does not turn on the probability of the event itself, but the seriousness of the harm that could result. See Bethlehem Steel Corp. v. Occupational

19

Safety & Health Review Comm'n, 607 F.2d 1069, 1073 (3d Cir. 1979); California Stevedore & Ballast Co. v. Occupational Safety & Health Review Comm'n, 517 F.2d 986, 988 (9th Cir. 1975). Moreover, in Turner this court considered and rejected a petitioner's contention that a violation was de minimis where an ALJ found that a potential fall from a ladder could result in a "serious injury". Turner, 612 F.2d at 944-45. Consequently, under Turner, the Commission was entitled to determine that a serious violation had occurred if it found, based on substantial evidence in the record, that a serious physical harm could result.

In assessing the severity of the ladder violation, the Commission considered the testimony of the compliance officer, who indicated that the trench ladder extended only 1.3 to 1.4 feet above the ground, rather than the 3 feet required by § 1926.1053(b)(1). The Commission further noted that, although the compliance officer testified he had observed that the workers had no actual difficulties in exiting from the trench, he also testified that in the event a trip occurred, it could "sprain an ankle, damage a knee, or even break a leg." ALJ Order, at 5. The Commission then admonished Southwestern Bell's contention regarding the nature of the potential for injury, saying "This judge does not agree that a broken bone is not 'serious physical harm' as contemplated by the Act." Id. at 6. The Commission was reasonably entitled to consider the low probability of accident

20

irrelevant under Turner, Bethlehem Steel, and California
Stevedore.  The Commission's determination that a serious broken
bone could result was based on substantial evidence in the record
as a whole.  Because Southwestern Bell does not claim that the
Commission abused its discretion in assessing the $ 600 penalty
for the ladder violation, but only claims that the Commission
wrongly classified the violation, a claim with which this court
disagrees, that penalty remains undisturbed.

**_E. $ 3600 in Penalties for the Shoring and Inspection Violations_**

Southwestern Bell contends that the $ 2250 and $ 1350 total
penalties assessed by the Commission for its shoring and
inspection violations, respectively, are excessive and should be
reduced.  We review the Commission's penalty assessments under 29
U.S.C § 666(j) for abuse of discretion.  See Dan J. Sheehan Co.
v. Occupational Safety & Health Review Comm'n, 520 F.2d 1036,
1041 (5th Cir. 1975).  Once the Commission properly determined
that all three violations were serious, it was mandatorily
required to assess some penalty of up to $ 7000 per violation but
granted discretion within that range.  See id. at § 666(b).  In
exercising its discretion as to the "appropriate[]" amount of
each penalty, the Commission is statutorily required to give "due
consideration" to four factors appearing within § 666(j),
including: (1) the "size of the business of the employer"; (2)
the "gravity of the violation"; (3) any "good faith of the

21

employer"; and (4) any "history of previous violations".  Id. at

§ 666(j).  See also Reich v. Arcadian Corp., 110 F.3d 1192, 1199

(5th Cir. 1997).  The four § 666(j) factors need not be weighted

equally by the Commission, and the gravity factor is generally

considered the most important element of the analysis.  See,

e.g., J.A. Jones Constr. Co., No. 87-2059, 1993 WL 61950, at *15

(O.S.H.R.C. Feb. 19, 1993).

This and other courts of appeals have a long history of

according great deference to the Commission's judgment as to the

appropriate penalty when, as here, the Commission gives

consideration to the statutory factors, and when the penalty

amounts fall within the statutory mandate.  Such courts of

appeals have done so in a wide range of circumstances, including

instances where the penalties assessed are at or near the maximum

statutorily allowed and thus much higher than those assessed

here.  See, e.g., Georgia Elec. Co. v. Marshall, 595 F.2d 309,

322 (5th Cir. 1979) (affirming $ 6500 penalty assessed for a

willful and serious violation regarding indifference to worker

safety, and a $ 650 fine for a serious crane operation

violation); Shaw Constr., Inc. v. Occupational Safety & Health

Review Comm'n, 534 F.2d 1183, 1185 (5th Cir. 1976) (affirming $

300 penalty assessed for trenching violation deemed serious);

Union Tank Car Co., Inc. v. Occupational Safety & Health Admin.,

192 F.3d 701, 707 (7th Cir. 1999) (affirming penalty of $ 1500

22

for employer's failure to use body harnesses, which created fall hazards); Bush & Burchett, Inc. v. Reich, 117 F.3d 932, 935-36, 939-40 (6th Cir. 1997) (affirming penalties totaling $ 337,200 for 25 serious violations, 10 willful violations, and 2 other violations, including fall protection and improper lifting of workers to work stations); Long Mfr. Co., N. C., Inc. v. Occupational Safety & Health Review Comm'n, 554 F.2d 903, 907, 909 (8th Cir. 1977) (affirming $ 5000 penalty for violation regarding punch press safety, despite that one dissenting commissioner felt the penalty was "grossly excessive"). Apparently, no court of appeals, including this one, has ever disturbed a penalty when, as in the instant case, the Commission has given due consideration to the § 666(j) factors, and when the penalty amount is within the statutorily proscribed limits.

In making its assessment affirming the ALJ's penalties, the Commission considered all four of the § 666(j) factors. As Southwestern Bell acknowledges, the Commission first credited the company with two factors in its favor, good faith and a lack of prior violations. The Commission also fully noted in Southwestern Bell's favor that there was evidence in the record that the "actual[]" danger of the violation was mitigated because the excavation was of only one-day duration and because there was testimony that, at the time, the "the ground was like 'solid cement' due to lack of recent rain". Comm'n Order, at 9. The Commission's assessment as a whole clearly indicates that the

23

Commission considered that, despite the low <u>actual</u> danger of injury, the <u>potential</u> danger rose to a significant level in that the violation, if it in fact occurred, would result in "serious injury or death". <u>Id.</u> The Commission also made clear that it considered this level of danger, albeit only potential, to be "aggravated", and thus increased, because the "the excavator had warned a [Southwestern Bell] supervisor of the need for trench protection." <u>Id.</u> at 9-10. Then the Commission properly added the weight of Southwestern Bell's size as a "large employer" to the overall penalty determination. <u>Id.</u> The Commission concluded that the negative factors outweighed the positive factors sufficiently so that, "[o]n balance", it felt the ALJ's penalty assessments "were appropriate." <u>Id.</u> at 10.

Southwestern Bell contends that four Commission decisions, in which it assessed lower penalties for what the company contends were violations of arguably heightened gravity, compel this court to find an abuse of discretion and thus to reduce the penalties. Those four cases merely establish, however, that the Commission <u>might</u> have exercised its discretion reasonably to assess lower penalties under the circumstances here. <u>See</u> <u>Sec'y of Labor v. Scafar Contracting, Inc.</u>, No. 97-0960, 1998 WL 597441, at *6 (O.S.H.R.C. Sept. 4, 1998) (assessing a $ 1500 penalty for a trenching violation that created "significant" danger of trench collapse where the employer also had a negative

24

violation history); <u>Sec'y of Labor v. Brandenburg Indus. Servs. Co.</u>, No. 96-1405, 1998 WL 168335, at *4 (O.S.H.R.C 1998) (assessing a $ 1625 penalty for a trenching violation, and including a 35% reduction for good faith and favorable prior history); <u>Sec'y of Labor v. Odyssey Capital Group, III, L.P.</u>, No. 98-1745, 1999 WL 1278190, at *4 (O.S.H.R.C. Dec. 30, 1999) (assessing a $ 1500 penalty for a violation of extended duration compounded by lack of good faith); <u>Sec'y of Labor v. Manganas Painting Co., Inc.</u>, Nos. 93-1612, 93-3362, 1996 WL 478959, at *14-15 (O.S.H.R.C. Aug. 23, 1996) (assessing just a $1000 penalty, although the gravity was deemed "relatively high" and employee exposure was low, and despite multiple prior violations). That the Commission chose to exercise its discretion differently, but still within permissible parameters, does not establish an abuse of discretion. <u>See, e.g.</u>, <u>Odeco Oil & Gas Co., Drilling Division v. Bonnette</u>, 4 F.3d 401, 404 (5th Cir. 1993).

The record shows that the Commission gave full consideration to the four § 666(j) factors. The total $ 3600 penalty assessed for Southwestern Bell's two serious inspection and shoring violations falls well below the $ 14,000 that the Commission was entitled to assess. The Commission, therefore, did not abuse its discretion in assessing the $ 3600 in total penalties for those two violations.

## IV. CONCLUSION

For the foregoing reasons, the Commission's orders are AFFIRMED.