# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

—————————

m 02-60255
Summary Calendar

—————————

NORTH DALLAS ACRYLIC & STUCCO, INC.,

Petitioner,

VERSUS

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
ELAINE CHAO,
SECRETARY, UNITED STATES DEPARTMENT OF LABOR,

Respondent.

—————————————

Petition for Review of an Order of
the Occupational Safety and Health Review Commission
(01-0727)

—————————————

October 16, 2002

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

PER CURIAM:[*]

———————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has
(continued...)

North Dallas Acrylic & Stucco, Inc.

———————————

(...continued)
determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("NDAS"), seeks review of an order of the Occupational Safety and Health Review Commission ("OSHRC") upholding a citation under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, for violations of 29 C.F.R. § 1926.451(e)(1), (g)(1). Concluding that the order rests on an error of law, we grant the petition for review and vacate and remand.

## I.

The facts are simple and undisputed. NDAS is a small stucco contractor. Its employees were working on a stucco project at a Wal-Mart store under construction. Foreman Noel Juarez led a crew applying stucco to an exterior wall. The crew had nearly completed the wall and, as they began to put the final touches on it, they erected a new segment of scaffolding that had a platform at just over ten feet and another platform at eighteen feet. The higher platform had guardrails to prevent workers from falling and a ladder to allow them to climb onto the platform. The lower platform had neither guardrails nor a ladder, a violation of 29 U.S.C. § 1926.451(e)(1), (g)(1). As it happened, Larry Moore, a compliance officer for the Occupational Safety & Health Administration ("OSHA"), was inspecting the Keller site just as two employees were working from the lower platform. OSHA issued three citations to NDAS, which contested each.[1]

An administrative law judge ("ALJ") held a hearing on the citations. Moore, Juarez, NDAS president Gary Mayfield, and Jose Vas-

quez, who was NDAS's field superintendent, testified. Moore spoke primarily about his inspection of the Keller site. Mayfield testified about NDAS's safety and enforcement policies.

Each newly hired employee receives a safety handbook in his language and watches safety videos, including information on the use of scaffolding. Employees attend weekly job site safety meetings with their foremen. Foremen sometimes discuss scaffolding safety at these meetings. Vasquez is responsible for inspecting job sites for safe scaffolding and disciplining employees for safety infractions.

NDAS does not maintain written disciplinary records or use a "progressive" discipline policy of increased punishments for each infraction, but repeated infractions result in termination. Mayfield recollected giving verbal reprimands to at least three workers. He also thought Juarez ran a safe site based on past personal inspections, but he reprimanded Juarez as a result of the OSHA citation.

Vasquez testified about his training in scaffolding safety, which is extensive; his safety inspections, which he conducts at each job site twice per week; and NDAS's safety and disciplinary policies. His testimony about these policies and Juarez's safety record does not differ from Mayfield's. Vasquez added that NDAS did not have a formal rule about the number of infractions necessary for termination, though he did recall that at least two employees had been fired partly for safety infractions and partly for insubordination.

Juarez testified about his decision not to install guardrails or a ladder on the lower platform. He took full responsibility for the safety infraction, stating that he accepted the blame

---

[1] In addition to the guardrail and ladder citations, OSHA cited NDAS for failing to secure the scaffolding with base plates on the ground. 29 C.F.R. § 1926.451(c)(2). The ALJ vacated this citation for lack of evidence.

"because it was my violation." He had been trained on safe scaffolding practices and had a clean safety record, which documentary evidence supported. He therefore knew not to allow workers on scaffolding without guardrails and ladders, but the two workers needed to use the lower platform for only a few minutes, much less time than it would have taken to install the guardrails and the ladder.

Juarez knew Vasquez would reprimand him for the safety infraction if Vasquez observed it. He did not think anyone would notice, though, because the job would be quick. Juarez stated, however, that he did not think Mayfield or Vasquez reprimanded him because of the OSHA citation; rather, he said "they called it to my attention so that it [would] not happen again."

The ALJ upheld the citations for failure to install guardrails and a ladder on the lower platform. The order concentrated exclusively on NDAS's defense of unpreventable employee misconduct. The ALJ concluded that NDAS had not established an essential element of the defense, namely, adequate enforcement of its safety policies. Yet, the ALJ imposed relatively meager penalties of $250 for each citation because of the short duration of the infractions, the low risk of injury, NDAS's small size, its good history with OSHA, and its extant, "albeit imperfect," safety policy.

NDAS filed a petition for discretionary review with OSHRC. Because no commissioner directed the petition to OSHRC for review, the ALJ's decision became the final order of OSHRC. 29 U.S.C. § 661(j). NDAS now petitions this court for review of that order. 29 U.S.C. § 660(a).

## II.
### A.

This case boils down to one simple dispute, namely, whether NDAS adequately enforced its safety policy. NDAS and the Secretary agree that "[k]nowledge is a fundamental element of the Secretary of Labor's burden of proof for establishing a violation of OSHA regulations." *Trinity Indus., Inc. v. OSHRC*, 206 F.3d 539, 542 (5th Cir. 2000). They also agree that the Secretary may prove (constructive) knowledge by showing that an employee's misconduct was foreseeable because the employer's safety and disciplinary policy is inadequate. *Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 569 (5th Cir. 1976).

The parties simply disagree on whether NDAS adequately enforced its safety policy. Likewise, they dispute only one element of the affirmative defense of unpreventable employee misconduct, i.e., whether NDAS adequately enforced its safety policy when it discovered violations. *Sec'y of Labor v. Precast Servs., Inc.*, No 93-2971, 1995 WL 693954, at *1 (Rev. Comm'n 1995) (stating elements).[2] Thus, whether for the Secretary's *prima facie* showing of constructive knowledge or NDAS's affirmative defense of unpreventable employee misconduct, they dispute only whether NDAS adequately enforced its safety policy. The evidence on this question is the same at either stage.

### B.

The parties contest the proper standard of review for this question. The Secretary insists that we should review the ALJ's decision that

---

[2] The other three elements are (1) established work rules, (2) adequate communication of these rules, and (3) steps taken to discover violations. *Precast Servs.*, 1995 WL 693954, at *1.

NDAS did not adequately enforce its safety policy only for substantial evidence. 29 U.S.C. § 660(a); *Cleveland Consol., Inc. v. OSHRC*, 649 F.2d 1160, 1167 (5th Cir. Unit B July 1981). NDAS, on the other hand, insists that we should review the ALJ's decision *de novo*, because he applied the wrong legal standard. *Horne Plumbing*, 528 F.2d at 567. We agree with NDAS and apply the *de novo* standard, because the ALJ's decision is "not in accordance with law." 5 U.S.C. § 706(2)(A).

C.

The ALJ committed an error of law when he purported merely to apply *Precast Services* to NDAS's affirmative defense.[3] The ALJ cited *Precast Services* for the proposition that "[t]hough an employer may rebut that evidence by showing that it had a *progressive disciplinary plan with increasingly harsh punishment* for infractions of work rules, *the Commission has found that programs consisting only of pre-inspection verbal warnings are insufficient to establish the defense*." (Emphasis added.) Using this standard to review the evidence, the ALJ concluded that NDAS did not have an adequate progressive disciplinary policy.

*Precast Services*, however, does not require an employer to rebut the Secretary's *prima facie* case with evidence of a *progressive* disciplinary policy; rather, *Precast Services* simply requires evidence of an "[a]dequate" disciplin-

ary policy. *Precast Servs.*, 1995 WL 693954, at *1. "The conventional way to prove the enforcement element is for the employer to introduce evidence of a disciplinary program by which the company reasonably expects to influence the behavior of employees." *Id.* *Precast Services* then noted that an employer *may* provide this evidence by using a progressive disciplinary policy, but it never held that an employer *must* use such a policy. Indeed, it offered the example of a progressive disciplinary policy only "[f]or instance." *Id.* Moreover, *Precast Services* expressly stated, contrary to what the ALJ stated, that "[i]n rare instances, the employer may be able to establish that its work rules were enforced with evidence of only verbal reprimands."

These errors of law fatally infected the ALJ's decision. The ALJ reviewed the evidence looking for an adequate *progressive* disciplinary policy, when he should have reviewed it looking for an adequate disciplinary policy, given all the circumstances. Perhaps the evidence still would support the citations under this standard, but perhaps not. The evidence against NDAS seems picayune, but it is the responsibility of the ALJ, not this court, to weigh the evidence. Our responsibility is only to ensure that the ALJ applies the proper legal standard when evaluating the evidence, which he did not in this case.

The petition for review is GRANTED, the citations against NDAS are VACATED, and the case is REMANDED to OSHRC for further proceedings consistent with this opinion.

---

[3] The ALJ never discussed how the Secretary made a *prima facie* showing of NDAS's knowledge as required by *Horne Plumbing*, 528 F.2d at 569, and *Trinity Indus.*, 206 F.3d at 542. He apparently presumed the *prima facie* showing because Juarez was a supervisor: "It is well settled that misconduct by [a] supervisor constitutes strong evidence that [the] safety program is lax."

4