**POWER PLANT DIVISION, BROWN & ROOT, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Raymond J. Donovan, Respondents.**

No. 79–3677.

United States Court of Appeals, Fifth Circuit.* Unit B

Oct. 26, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Powell, Brown & Maverick & Associate, P.C., Houston, Tex., for petitioner.

Allen H. Feldman, Dennis K. Kade, U.S. Dept. of Labor, Washington, D.C., for respondents.

Before GODBOLD, Chief Judge, TUTTLE and HILL, Circuit Judges.

GODBOLD, Chief Judge:

Like the petitioners in *S&H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273 (5th Cir. 1981), decided today, petitioner Power Plant Division, Brown & Root, Inc. (Brown & Root) seeks review of a final order of the Occupational Safety and Health Review Commission finding it in serious violation of 29 C.F.R. § 1926.28(a)[1] for failing to provide appropriate personal protective equipment for employees working at heights. Unlike our decision in *S&H Riggers*, however, we affirm the citation issued to Brown & Root.

Brown & Root is a large construction firm based in Texas. At the time of the inspection that gave rise to this proceeding Brown & Root was engaged in constructing a nuclear power plant in Glen Rose, Texas. The reinforced concrete structures were built by erecting a framework of steel reinforcing rods ("rebars"), mounting metal forms around the rebars to hold the concrete while it set, and then pouring concrete into the framework. Two groups of employees were exposed to the alleged hazard. Employees called "cadwelders" worked in vertical lines across the sides of the structure, burning off the overlapping ends of rebars and welding the rebars together. Because each cutting and welding operation took some time, a cadwelder generally did not move far during the course of a working day. Carpenters also worked on the side of the structure, their work being such that they frequently climbed up, down, and across the structure for some distance. Both cadwelders and carpenters worked at heights of up to 270 feet above the ground.

It was stipulated that Brown & Root had an extensive and enforced safety program. All employees working over six feet above the ground were required to wear safety belts tied off to lanyards[2] except when moving from place to place. When working at a given location both cadwelders and carpenters tied off their safety belts to either rebars or metal forms by means of a one-quarter inch chain and a large hook. When moving from place to place on the side of the structure, however, neither group of employees were provided with any means of tying off their safety belts.

On the day before the inspection a carpenter fell to his death from the structure. At the time of the fall he was moving horizontally on the structure, attempting to maneuver around a corner of the building. He wore a safety belt, but it was not tied off.

At the time of the inspection the compliance officer observed both carpenters and cadwelders moving vertically and horizontally across the side of the structure without tying off their safety belts. A citation for violation of 29 C.F.R. § 1926.28(a) was issued, Brown & Root filed a timely notice of contest, and a hearing was held. In its post-hearing brief to the ALJ Brown & Root argued that the case was controlled by the Commission's decision in *S&H Riggers & Erectors, Inc.*, 1979 CCH OSHD ¶ 23,480. The brief, quoting from that opinion, stated the applicable standard as follows:

> "Certainly, industry custom and practice are important reference points in determining whether a reasonable person familiar with the facts unique to a particular ·industry would recognize a hazard necessitating the use of personal protective equipment. *However, custom and practice are not controlling.*"

---

1. The regulation provides:

   The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.

2. Essentially, a lanyard is a rope attached to the safety belt and to a solid structure. *See* 29 C.F.R. § 1926.104.

Respondent's Brief to ALJ at 7 (emphasis added).

The ALJ found that some method of tying off employees moving from place to place on the side of the structure was both necessary and feasible and, accordingly, affirmed the citation. Brown & Root filed with the Commission a petition for discretionary review, again citing the Commission's *S&H Riggers* decision as the controlling precedent. Brown & Root argued that under *S&H Riggers* the Secretary was required to prove either that it was the industry practice to provide lifelines to workers moving about on the sides of such a structure or that a reasonable person would recognize a need for lifelines under these circumstances and that the Secretary had failed to meet either requirement. Brown & Root also argued that the methods of abatement suggested by the Secretary were not feasible. The Commission denied review, and Brown & Root petitioned this court for review of the ALJ's decision.

■ In this court Brown & Root argues for the first time that the ALJ's decision cannot stand because he relied on the Commission's decision in *S&H Riggers & Erectors, Inc.*, 1979 CCH OSHD ¶ 23,480, which held that industry practices are not controlling in determining whether failure to provide personal protective equipment is a violation of § 1926.28(a). Brown & Root contends that, under the law of this circuit, industry practices are determinative of an employer's duty under § 1926.28(a) and that the Secretary failed to establish that it is the customary practice in the industry to provide lifelines for workers climbing up, down, and across concrete forms and rebars. Although we have today reaffirmed that proof of a violation of § 1926.28(a) requires a showing that the employer either failed to provide or to require the use of personal protective equipment customarily used in its industry or had actual knowledge of the

need for personal protective equipment, *S&H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273 (5th Cir. 1981), *rev'g* 1979 CCH OSHD ¶ 23,480, we are precluded from considering this argument in Brown & Root's case because it did not raise the issue below.[3]

In a proceeding to review an order of the Commission or of one of its ALJ's "[n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 660(a). Because "the language of section 660(a) indicates that proceedings targeted towards the Commission, not those before the administrative law judges, are the predicate to judicial review," *McGowan v. Marshall*, 604 F.2d 885, 890 (5th Cir. 1979), an employer who fails to either file a petition for discretionary review with the Commission, or to file a brief if review is directed *sua sponte*, is precluded from obtaining judicial review. Since Brown & Root petitioned the Commission for discretionary review, it is not entirely precluded from judicial review. However, on the issue of the effect of compliance with industry practices Brown & Root's petition was wholly inadequate to satisfy the requirement of § 660(a) that an objection be "urged before the Commission."

We have recently held that an argument need not necessarily be specifically raised in an employer's review petition in order to preserve it for judicial review, at least in the case of review petitions filed before the Commission's decisions in *Gannett Rochester Newspaper Corp. and Rochester Newspaper Pressman's Union No. 36*, 3 Empl. Safety and Health Guide (CCH) ¶ 25,323 (1981) and *Austin Bldg. Co.*, 1980 CCH OSHD ¶ 24,839, which require greater specificity in review petitions. In *Cleveland*

---

**3.** The Secretary does not argue Brown & Root's failure to raise this issue below, but we reach it nonetheless. 29 U.S.C. § 660(a) prohibits this court from considering arguments not presented to the Commission, *see* text *infra*. We have previously characterized this as a limit upon our jurisdiction. *See McGowan v. Marshall*, 604 F.2d 885, 889 (5th Cir. 1979). Whether or not this is jurisdictional in the strict sense of subject matter jurisdiction to decide a case, we do not believe that Congress's express command may be waived by the Secretary's failure to raise the issue.

*Consolidated, Inc. v. OSHRC*, 649 F.2d 1160, 1164–65, (5th Cir. 1981), we held that "*McGowan* requires simply that the Commission be alerted to the issues and have the opportunity to pass on them before a court begins its review of the administrative process. Broad language in a petition for review might be sufficient to satisfy this requirement...." Thus, while great specificity is not required in a review petition, this court may not consider an argument unless the Commission has been "alerted to the issues."

Brown & Root's review petition is not only insufficient to alert the Commission to the arguments it now seeks to raise, but, in the context of this case, is actually affirmatively misleading with respect to Brown & Root's position on this issue. First, neither Brown & Root's brief to the ALJ nor its review petition cites any of the Fifth Circuit cases on which it now seeks to rely or mentions the conflict between those cases and the Commission's *S&H Riggers* opinion. Nor did Brown & Root argue to either the ALJ or the Commission that industry practices are controlling in a § 1926.28(a) citation proceeding. Although this alone might seem sufficient to preclude review, we do not rest our decision on it. In his opinion the ALJ discussed the Fifth Circuit cases and the conflict with *S&H Riggers.* The ALJ rejected the Fifth Circuit precedent and followed the Commission's *S & H Riggers* decision because, as an OSHA ALJ, he felt bound by Commission precedent even in a circuit holding to the contrary. The ALJ noted, however, that Brown & Root could probably obtain a reversal in this court on that ground. Despite this, Brown & Root's review petition accepts the Commission's *S&H Riggers* decision as controlling precedent and argues only that the ALJ misapplied that precedent.[4] In the face of the ALJ's clear discussion of the precise issue Brown & Root now seeks to raise, the Commission could only conclude from its review petition that, for whatever reason, Brown & Root had decided not to challenge the Commission's position on industry practice. Our

reversal of *S&H Riggers* demonstrates that we cannot accept the Commission's position on industry practice but to reverse the Commission on that ground in the case of an employer who acquiesced in the Commission's position below would violate the clear command of § 660(a).

No extraordinary circumstances exist, such as in *RMI Co. v. Secretary of Labor*, 594 F.2d 566 (6th Cir. 1979) and *Todd Shipyards Corp. v. Secretary of Labor*, 586 F.2d 683 (9th Cir. 1978), that would excuse Brown & Root's failure to raise this issue before the Commission. In each of those cases the Court found extraordinary circumstances because the case relied upon by the employer in the court of appeals was decided after the employer filed its petition for Commission review. By contrast, the most recent case Brown & Root now seeks to rely on, *Cotter & Co. v. OSHRC*, 598 F.2d 911 (5th Cir. 1979), was decided a month before it filed its brief to the ALJ and long before it filed its review petition. Moreover, Brown & Root cannot contend it was unaware of these decisions in light of the ALJ's discussion of them and the fact that Brown & Root was itself the successful petitioner in one of them, *Power Plant Division, Brown & Root, Inc. v. OSHRC*, 590 F.2d 1363 (5th Cir. 1979).

The necessity for raising with the Commission the issue of industry practice was not diminished by the Commission's recent consideration and rejection in *S&H Riggers* of the Fifth Circuit's position. "[P]robable futility cannot be equated with extraordinary circumstances. The administrative agency must be given the opportunity to correct its own mistakes." *Keystone Roofing Co. v. OSHRC*, 539 F.2d 960, 964 (3d Cir. 1976).

The Ninth Circuit has found extraordinary circumstances to exist where the Commission's interpretation of the statute is challenged and "a legal question fundamental in this and future cases" is raised, *Brennan v. OSHRC*, 511 F.2d 1139, 1143 n.4

---

4. We note that the ALJ's opinion appears to be fully consistent with the Commission's approach in *S & H Riggers.* Any flaw in the

ALJ's opinion derives from the flaw in the precedent applied, and not from its application.

(9th Cir. 1975). If this means that extraordinary circumstances exist whenever a fundamental legal question is raised for the first time in the court of appeals, we must disagree. To so hold would remove most of the substance from the command of 29 U.S.C. § 660(a) that issues raised for the first time in the court of appeals shall not be considered. Fundamental legal questions, no less than other issues, should be considered in the first instance by the body charged with administering the Act. *Cf. Todd Shipyards Corp., supra*, 586 F.2d at 689 n.11; *American Airlines, Inc. v. Secretary of Labor*, 578 F.2d 38, 41 n.7 (2d Cir. 1978) (both refusing to consider constitutional issues raised for the first time in the court of appeals). This is particularly true where, as here, a party has affirmatively misled the Commission as to its position on an issue.

■ Brown & Root's second contention is that the ALJ erred in allocating to it the burden of proving that the chains used by its employees to tie off while actually performing welding operations were the equivalent of lanyards as defined in 29 C.F.R. § 1926.104(d). Brown & Root argues that under 29 C.F.R. § 2200.73(a), "[i]n all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Secretary," and that the Secretary should therefore have been required to prove that the chains were not the equivalent of lanyards. Any error in this regard, however, was harmless, because it did not form the basis of the ALJ's decision. The ALJ found that Brown & Root had violated § 1926.28(a) not because the chains were not lanyards but because Brown & Root's employees were not provided with any means of tying off when moving from place to place. Whether or not the chains satisfied the requirements of § 1926.104(d) is therefore irrelevant, as Brown & Root does not contend that these chains were or could be used by employees to tie off when traversing the sides of the structure.

Brown & Root's final argument is that, as with the question of whether the chains were the equivalent of lanyards, the ALJ improperly placed on Brown & Root the burden of proving that the means of abatement suggested by the Secretary was infeasible and, in the alternative, that infeasibility was established. In its decision in *S&H Riggers* the Commission reversed earlier cases and held that the Secretary's burden under § 1926.28(a) is merely to articulate an appropriate form of personal protective equipment, whereupon the burden shifts to the employer to show that personal protective equipment is infeasible. We did not reach this issue in our reversal of *S&H Riggers*. Although Brown & Root's reliance below on the Commission's *S&H Riggers* opinion might seem to preclude our consideration of this argument as well, Brown & Root's petition for discretionary review does raise burden of proof and feasibility issues. Because, unlike the industry practice issue, it is arguable that Brown & Root urged this issue to the Commission, we will consider it. *Cf. Cleveland Consolidated, supra* (assuming that general objection was sufficient to preserve specific issue for judicial review). We find Brown & Root's argument without merit.

■ With respect to the allocation of the burden of proof, the ALJ in his findings of fact stated that Brown & Root had not sustained the burden of proving lifelines infeasible. Assuming this allocation of the burden of proof was error, however, it was harmless because elsewhere in his opinion the ALJ found that "[r]egardless of which party has the burden of proof, the evidence of this case shows that safety belts, lanyards, and lifelines were not only appropriate but were feasible." ALJ opinion at 12. As this finding is supported by substantial evidence, we are bound by it. 29 U.S.C. § 660(a).

The OSHA compliance officer advocated the use of a "sky genie" or a "triple sliding hitch" as methods of tying off employees moving from place to place. These seem to be climbing devices used by window washers and tree trimmers. There was no evidence that such devices had ever been used in the construction industry. Brown & Root argues that the compliance officer had insufficient experience with the construction industry for his testimony to support a

**1296**

finding that the use of such devices by Brown & Root was feasible, and that Brown & Root should not be expected to look to the practices of totally unrelated industries for appropriate safety equipment.

Admittedly, there are problems with respect to the "sky genie" and the "triple sliding hitch." The compliance officer did not describe either device in sufficient detail to enable someone unfamiliar with it to implement its use. Whether the use of a "sky genie" or "triple sliding hitch" would be feasible is of little consequence, however, as the ALJ also found, and the evidence amply supports his finding, that another method of tying off was feasible.

Testimony at the hearing established that Brown & Root hangs various ropes from the rebars by means of which employees raise and lower tools and equipment. As the ALJ found, if ropes are hung from the rebars to raise and lower equipment, there appears to be no reason why lanyards could not be hung from the rebars at intervals to provide a method of tying off employees moving from place to place. Brown & Root's argument that there was no evidence that the ropes used for raising tools met the strength requirements of § 1926.104(d) is not responsive. The ALJ did not find that the same ropes used for raising tools could be used as lanyards but rather that their use indicates the feasibility of hanging ropes from rebars for use as lanyards. Regardless of which party bears the burden of proof on feasibility, substantial evidence supports the ALJ's finding that such lifelines were feasible.

AFFIRMED.