IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.01-60743
Summary Calendar
_____

MICA CORPORATION,

                              Petitioner,

      v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; ELAINE CHAO,

SECRETARY, DEPARTMENT OF LABOR,

                              Respondents,

--------------------

Petition for Review of an Order of the
Occupational Safety and Health Review Commission
--------------------
May 22, 2002

Before DAVIS, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

     Petitioner MICA Corporation ("MICA") appeals from the

Occupational Safety and Health Review Commission ("OSHRC")'s Notice

of Final Order, in which the OSHRC declined to review a Decision

and Order of an Administrative Law Judge ("ALJ").  The ALJ's

Decision and Order sustained two citations against MICA for alleged

violations of the Occupational Safety and Health Act, 29 U.S.C. §§

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

651-78. Finding that substantial evidence supports the ALJ's order, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

MICA engages in highway-related work, including the placement and removal of concrete traffic barriers ("CTBs") used on highway construction projects. To remove a CTB, MICA uses a hydraulic crane mounted on a truck; the crane lifts a CTB and transfers it to another truck. A group of rotating trucks transports the barriers to a storage area.

While MICA ordinarily uses its own cranes and crane operators, on April 4, 2000, MICA leased a crane and a crane operator, Michael Grisham ("Grisham"), from RCT Leasing, Inc. ("RCT") for a CTB removal project. James Blalock ("Blalock"), MICA's foreman on the site, assigned the crew members their duties and drove one of the trucks that MICA used to transport the CTBs to its stockpile, 15-30 minutes away. Blalock assigned Jason Owens, a MICA employee, to drive the truck on which the crane was mounted. A fourth crew member, Stewart Kugler ("Kugler"), marked the centers of the CTBs and set clamps on the top of the CTBs that were to be moved by the crane onto the trailer trucks.

Owens testified that in CTB removal operations all that the crane truck driver can see in his side view mirror is the ground, the CTB, the outriggers and the side of the crane, and that in other CTB removal projects on which he had worked, the crane truck driver was directed by hand signals from a ground man. In those

2

operations, a second ground man was charged with handling the CTB, placing clamps on it, and guiding the CTB to the waiting truck. On this occasion, only one ground man was assigned to the crew, as MICA appears to have been shorthanded. Blalock had told Kugler to assist the crane operator and crane truck driver, and Kugler understood his job to include acting as a "spotter" watching out for electrical power lines and other potential hazards. However, Grisham rejected Kugler's assistance. Kugler then focused solely on the other ground person functions of handling the CTBs and guiding them onto the trucks.

Owens relied solely on Grisham to direct him when he was backing up the truck. They agreed upon a system for coordination between the two: when Grisham had completed a lift, he would leave the back outriggers out and pick up the jacks. Once the jacks were up, Owens was to take over control of the accelerator and back up to the center of the next CTB. When Owens saw that the outrigger and the CTB were lined up, or upon Grisham's signal (honking the horn), Owens would stop, put the engine in neutral, turn on the parking brake, and turn accelerator control over to Grisham.

On the morning of April 4, after the crew had finished placing a load of CTB on Blalock's truck, an accident occurred. Owens began to back up the crane carrier and, on Grisham's signal, stopped. At that point, Kugler, who was in the process of marking a CTB, heard a noise behind him, looked up, and saw that the crane

3

cable had contacted a power line and was sparking.[1]  Grisham got out of the operator's cab and began walking around the back of the crane towards Owens, when he fell to the ground due to a surge of electricity.  Blalock walked over and grabbed Grisham's leg, but he was knocked unconscious by a second surge of electricity.  Owens was also thrown to the ground by the surge, and when it stopped he ran away.  Blalock and Grisham died from their injuries.  Kugler was burned, and Owens was taken to the hospital.

Citations were initially issued against both RCT and MICA for operating the crane too close to the power line and for failing to designate an observer.  The Secretary later dismissed the citations against RCT and proceeded solely against MICA.  After a hearing, the ALJ affirmed two citations against MICA, combining them for purposes of assessing a single penalty of $3,500.00.  Upon a petition for review by MICA, the OSHRC declined to review the ALJ's decision.  MICA appeals.

## DISCUSSION

"We are bound by the OSHRC's findings on questions of fact and reasonable inferences drawn from them if they are supported by substantial evidence on the record considered as a whole even if this court could justifiably reach a different result de novo. . . .  The OSHRC's legal conclusions are reviewed as to whether they

---

[1]It is not clear from the record whether the crane contacted the power cable as a direct result of Grisham's operation of the crane, or of Owens' backing up of the crane truck.

4

are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . . We review the Secretary's interpretation of an OSHA regulation to assure that it is consistent with the regulatory language and is otherwise reasonable." *Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 426-27 (5th Cir. 2001).

MICA was cited for alleged violations of two OSHA standards. The first, 29 C.F.R. §1926.550(a)(15)(i)[1] (the "clearance" standard), requires that a 10 foot clearance be maintained between any part of the crane or load and the lines. The second, 29 C.F.R. § 1926.550(a)(15)(iv) (the "designation" standard), provides that "[a] person shall be designated to observe clearance of the equipment and give timely warning for all operations where it is difficult for the operator to maintain the desired clearance by visual means."

We find that substantial evidence supports the Commission's acceptance of the ALJ's conclusions that MICA violated both standards.

---

[1]This section provides:
"Except where electrical distribution and transmission lines have been deenergized and visibly grounded at point of work or where insulating barriers, not part of or an attachment to the equipment or machinery, have been erected to prevent physical contact with the lines, equipment or machines shall be operated proximate to power lines only in accordance with the following:
...
(i) For lines rated 50kV or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet."

5

MICA argues that substantial evidence does not support the finding that MICA was subject to, or violated, the clearance standard, because Grisham (an RCT employee), not MICA, was in control of the clearance. However, the crane operated by Grisham and the truck driven by Owens functioned as a single piece of equipment and the clearance standard applied to the operation of both. While it may not be clear which piece of the equipment was the last to move before the power line was contacted, the fact that any part of the combined equipment was within the 10 foot clearance zone is a result of the joint operation of the two pieces of equipment. In addition, the ALJ correctly noted that MICA could have abated the hazard, as the operation was being performed at its worksite, and its employees had expertise that would have allowed them to identify and abate the hazard. Moreover, the fact that Grisham refused an observer does not mean that, had a spotter been specifically designated, Grisham would have ignored his warnings. Thus, substantial evidence supports the ALJ's finding that MICA had sufficient control over the clearance so as to be held liable for the clearance violation.

MICA also argues that the designation standard did not require the designation of an observer, because the crane operator, Grisham, had an unobstructed view in all directions. But this fact is irrelevant; Owens, the operator of the truck, had no view of overhead hazards behind the truck, so an observer was required to be designated to assist Owens.

In the alternative, MICA asserts that substantial evidence does not support the finding that MICA violated the designation standard, as it claims that Kugler was designated as an observer. The OSHRC has previously stated that the designation standard requires that "affirmative action... be taken by the employer." *Secretary of Labor v. Halmar Corp.*, 18 O.S.H. Cas. (BNA) 1014 (Rev. Comm'n. 1997) (citing *Brennan v. OSHRC (Gerosa, Inc.)*, 491 F.2d 1340 (2d Cir. 1974) (holding that 'designate' requires specific and positive action by employer to inform an employee of the existence and nature of his duties)). And the Secretary interpreted the regulation as requiring that, at the very least, the designated employee must be made to appreciate that his or her watch-and-warn duties persist for the duration of the exposure to the hazards associated with operating a crane where it may encounter power lines. Because this interpretation of the standard is consistent with the regulatory language and reasonable, we defer to it. *See Martin v. OSHRC*, 499 U.S. 144, 154-56 (1991); *United Steelworkers of America v. Schuylkill Metals Corp.*, 828 F.2d 314, 319 (5th Cir. 1987). In this case, the record shows only that Blalock gave a vague direction to Kugler to help Grisham, and did not inform Kugler of his duty to ensure that the clearance be maintained throughout the duration of the operation. Thus, substantial evidence supports the finding of a violation of the designation standard.

Finally, MICA argues that substantial evidence does not support the finding that MICA knew or should have known of the violative conditions. *Trinity Indus., Inc. v. OSHRC*, 206 F.3d 539, 542 (5th Cir. 2000) ("[T]he Secretary must show that the employer knew of, or with exercise of reasonable diligence could have known of the non-complying condition."). Because MICA regularly worked on CTB removal, MICA was well aware of the common danger of overhead power lines, and of the fact that Owens' view would be restricted. Thus, MICA knew or should have known that a spotter would be required. Given his vague instructions to Kugler, his status as a supervisor, and the composition of the crew (with only one groundperson, rather than two), Blalock should have checked to ensure that the removal operation was being conducted with proper safeguards. And had he checked, Blalock could have known of the lack of a spotter. Thus, substantial evidence supports the finding that MICA had knowledge of the non-complying conditions.

CONCLUSION

Because substantial evidence supports the ALJ's findings, affirmed by the OSHRC, we AFFIRM the OSHRC's decision.