# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60342

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2016

Lyle W. Cayce
Clerk

JACOBS FIELD SERVICES NORTH AMERICA, INCORPORATED,

     Petitioner

v.

THOMAS E. PEREZ, SECRETARY, DEPARTMENT OF LABOR,

     Respondent

Petition for Review of an Order of the
Occupational Safety and Health Review Commission

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Jacobs Field Services North America, Inc., petitions for review of an order of the Occupational Safety and Health Review Commission citing Jacobs for violations of the process safety management standards, 29 CFR §§ 1910.119(j)(2) and (3). The petition for review is DENIED.

I

Jacobs Field Services North America, Inc. (Jacobs) is a maintenance contractor that provides skilled labor to perform electrical and instrumentation work, pipe-fitting work, millwright work, material handling,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60342

and warehouse work. Jacobs is the resident maintenance contractor at a chemical plant in La Porte, Texas, owned and operated by Akzo Nobel Polymer Chemicals (Akzo). Akzo's La Porte facility manufactures organometallic specialty chemicals used in the plastics industry. To transform raw materials into new products, Akzo uses a pressure-rated process vessel called a reactor. The reactor is connected to six settler tanks, pressure-rated process vessels that are used to separate chemicals into heavier and lighter compounds. Each tank is a vertical structure with six "decant valves" mounted to its side and connected to pipes. Employees use the valves to regulate and direct the flow of chemical fluid. To open and close the valves, Akzo uses automated devices known as actuators, which are mounted to brackets on top of each valve. Actuators at the La Porte facility are mounted using two different methods: in the "old style," four bolts connect the actuator to the top of the bracket and four additional, longer bolts hold the bottom of the bracket, the valve bonnet, and the valve body together; in the "new style," the bottom four bolts connect the bottom of the bracket to the flange of the valve, a rim that projects from the valve body. All eight of the bolts can be removed from a new style mounting system, but removing the bottom four bolts from an old-style mounting system causes a loss of containment.

On March 4, 2013, David Atcheson, Jacobs's instrument and electrical supervisor, instructed Jacobs employee Toyo Gonzalez to troubleshoot four actuated decant valves on the T-802 BEM settler tank, which contained approximately 9,500 gallons of butylethylmagnesium-heptane mixture (BEM). BEM is pyrophoric, meaning that it ignites when exposed to air. Gonzalez checked the air flow on the malfunctioning actuators and replaced the fittings and air lines, which resolved the problem with three of the four. When replacing these components did not resolve the problem with the fourth valve, Gonzalez attempted to remove the actuator from the bracket mounting it to

valve. This actuator was mounted in the old style. After removing several of the bolts that attached the actuator to the top part of the bracket, Gonzalez was still unable to remove the actuator. He then attempted to remove the actuator bracket by loosening the bottom four bolts. This caused a loss of containment: BEM was released from valve and splashed onto Gonzalez, causing first- and second-degree burns to his face, wrists, and neck.

The following day, the Occupational Safety and Health Administration (OSHA) conducted an inspection of the La Porte facility. OSHA issued Jacobs a citation alleging six violations of the Occupational Safety and Health Act (OSH Act) and its process safety management (PSM) standards:

- Item 1 alleged a serious violations of 29 C.F.R. § 1910.119(d)(3) for failing to make information available to employees pertaining to equipment in the process;

- Item 2a alleged a serious violation of § 1910.119(f)(4) for failing to develop and implement safe work practices to provide for the control of hazards;

- Item 2b alleged a serious violation of § 1910.147(c)(4)(i) for failing to ensure procedures were developed, documented, and utilized for the control of potentially hazardous energy when employees were engaged in maintenance activities;

- Item 3 alleged a serious violation of § 1910.119(j)(2) for failing to establish and implement written procedures for maintaining the ongoing integrity of process equipment;

- Item 4 alleged a serious violation of § 1910.119(j)(3) for failing to train Gonzalez in an overview of the process and its hazards and in the procedures applicable to his tasks; and

No. 15-60342

- Item 5 alleged a serious violation of § 1910.132(d)(1)(i) for failing to assess hazards in the workplace and select and require affected employees to use appropriate personal protective equipment.

Proposed penalties totaled $33,000.00.

Jacobs contested the citation and a hearing was held before an administrative law judge (ALJ) on April 16-17, 2014. Jacobs asserted that as the owner and operator of the plant, Akzo was the appropriate "employer" responsible for fulfilling the requirements set forth in the cited PSM standards and that the cited standards did not apply to Jacobs. Jacobs also argued that the lockout/tagout standard, § 1910.147(c)(4)(i), did not apply to the cited activity, and that Gonzalez was wearing appropriate personal protective equipment under § 1910.132(d)(1)(i). Finally, Jacobs asserted the affirmative defense of unpreventable employee misconduct. On September 4, 2013, the Secretary of Labor (Secretary) withdrew Item 1 of the Citation.

On February 5, 2015, the ALJ issued an order vacating Items 2a, 2b, and 5 of the citation,[1] affirming Items 3 and 4, and assessing a penalty of $7,000 for each affirmed violation. In affirming Items 3 and 4, the ALJ expressly rejected Jacobs's argument that §§ 1910.119(j)(2) and (3) do not apply to contract employers, finding that, under OSHA's multi-employer policy, the cited standard applied "to the cited *conditions*, not to the cited *employer*." Because Jacobs was the "exposing employer," it was responsible "for all violative conditions to which its employee had access." The ALJ also expressly rejected Jacobs's argument that standard did not apply because the actuator

---

[1] The ALJ found that Items 2a and 2b were duplicative and therefore struck Item 2a. After analyzing Item 2b, he determined that the Secretary had failed to establish that Jacobs had actual or constructive knowledge that its employee would have access to the release of chemical energy and thus failed to prove a violation of § 1910.147(c)(4)(i). The ALJ vacated Item 5 after determining that the Secretary's citation incorrectly focused on "the adequacy of the PEE used by Gonzalez, [rather than] the lack of a hazard assessment."

was not a part of the "process equipment" covered by §§ 1910.119(j)(2) and (3). Finding that "Jacobs's focus on the actuator as the component to which sections 1910.119(j)(2) and (3) apply is too narrow," the ALJ concluded that the standard applied "to the bracket and bolts used to mount to actuator to the valve bonnet," and thus to the cited condition.

On March 2, 2015, Jacobs filed a petition for discretionary review with the Occupational Safety and Health Review Commission (OSHRC or Commission). In its petition, Jacobs argued that the ALJ erred in affirming Items 3 and 4 because "Jacobs was not tasked by Akzo Novel with performing mechanical integrity work, and Jacobs did not otherwise task its employee to perform mechanical integrity work." The Commission did not direct the case for review, and the ALJ decision became the final order of the Commission on March 23, 2015. On May 12, 2015, Jacobs filed a timely petition for review with this court.

II

The Commission's factual findings are conclusive on review if they are supported by substantial evidence in the record as a whole. 29 U.S.C. § 660(a); *MICA Corp. v. OSHRC*, 295 F.3d 447, 449 (5th Cir. 2002). We will uphold the Commission's legal conclusions unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *MICA Corp.*, 295 F.3d 449. We apply these same standards to an unreviewed ALJ decision. *Austin Indus. Specialty Servs., L.P. v. OSHRC,* 765 F.3d 434, 438-39 (5th Cir. 2014). The Secretary's interpretation of his own standard must be upheld if it is reasonable, that is, if it "sensibly conforms to the purpose and wording of the" standard. *Martin v. OSHRC (CF&I Steel Corp.)*, 499 U.S. 144, 150-52 (1991); *MICA Corp.*, 295 F.3d at 449. The Secretary's reasonable interpretation of the OSH Act is likewise entitled to deference. *National Ass'n of Home Builders v. OSHA*, 602 F.3d 464, 468 (D.C. Cir. 2010).

No. 15-60342

III

Jacobs raises three challenges to the Commission's final order. First, it argues that the ALJ erred in applying the requirements of §§ 1910.119(j)(2) and (3) to it, a contract employer. Second, it argues that, even if it were subject to the requirements of §§ 1910.119(j)(2) and (3), the ALJ erred in determining that the injured employee was tasked with performing "mechanical integrity" work such that those requirements applied. Finally, in its reply brief, Jacobs argues that the ALJ erred in determining that it knew or should have known of the hazardous condition. We find that the first and third arguments are forfeited, and we reject the second.

A

Section 11(a) of the OSH Act states that "[n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 660(a). "The language of section 660(a) indicates that proceedings targeted towards the Commission, not those before the administrative law judges, are the predicate to judicial review." *McGowan v. Marshall*, 604 F.2d 885, 890 (5th Cir. 1979). "While great specificity is not required in a review petition, this court may not consider an argument unless the Commission has been alerted to the issues." *Power Plant Div., Brown & Root, Inc. v. Occupational Safety & Health Review Comm'n*, 659 F.2d 1291, 1294 (5th Cir. 1981) *reh'g granted, opinion modified on other grounds*, 673 F.2d 111 (5th Cir. 1982). Our sister circuits have explained that to preserve an argument for appellate review, the employer's petition for discretionary review must "offer a modicum of developed argumentation in support of" the objection, *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 107 (1st Cir. 1997), and that an employer's "abbreviated mention of its challenge to the validity of the [cited] Standard is 'wholly inadequate to satisfy the

6

requirement of § 660(a) that an objection be urged before the Commission,'" *Durez Div. of Occidental Chem. Corp. v. OSHA*, 906 F.2d 1, 5 (D.C. Cir. 1990) (quoting *Brown & Root*, 659 F.2d at 1293).

In its petition for discretionary review, Jacobs did not urge an objection to the ALJ's finding that 29 C.F.R. §§ 1910.119(j)(2) and (3) properly applied to it as a contract employer. The petition expressly "takes exception" to only two portions of the ALJ's Decision and Order: (1) that "wherein the [ALJ] finds as a fact that 'the same bolts hold the valve bonnet and valve together also connect the actuator to the valve,'" and (2) that "wherein the [ALJ] concluded that the actuator is 'process equipment.'" Jacobs's only mention of the ALJ's finding that the standard is applicable to it as a contract employer occurred in the context of the second objection. The company wrote:

> The ALJ rejected Jacobs' argument that under the circumstances, the requirements of paragraph (j) were intended to apply to Akzo Nobel as the host employer, and not to Jacbos, a contract[] employer. Even assuming the ALJ is correct and the requirements of paragraph (j) are applicable to Jacobs under the circumstances, then Jacobs' determination that the actuator was not critical process equipment controls.

At best, this is an "abbreviated mention" of Jacobs's challenge to the application of the standard; plainly read, the objection fails to contest the ALJ's determination.

In its reply brief, Jacobs asserts that "[t]he *issue* is the applicability of (j)(1) and (j)(3) to Jacobs, a contractor" and that "[i]n supporting its position that those provisions do not apply, Jacobs is not precluded from arguing each of the multiple *reasons* these requirements do not apply to Jacobs under the circumstances of this case." But this argument proves too much; extending its logic, the issue in any petition for discretionary review could be framed as "the impropriety of the OSHA citation" and any reason could then be presented as an objection in a petition for appellate review. Furthermore, Jacobs's attempt

to distinguish an "issue" from a "reason" is inconsistent with the language of 29 U.S.C. § 660(a), which speaks of "objections," and with this court's precedent. *See Brown & Root*, 659 F.2d at 1294 (finding the petition for discretionary review "insufficient to alert the Commission *to the arguments it now seeks to raise*") (emphasis added).

Because the contention that 29 C.F.R. §§ 1910.119(j)(2) and (3) were not properly applicable to Jacobs as a contract employer was not urged before the Commission in a petition for discretionary review, we find that this argument was forfeited and thus hold that this court lacks jurisdiction to consider it.  *See McGowan,* 604 F.2d at 889 (characterizing the requirements of 29 U.S.C. § 660(a) as jurisdictional in nature).

B

Jacobs argues that, even if §§ 1910.119(j)(2) and (3) do apply to contract employers, the ALJ erred in applying them in this case because the actuator was not "process equipment" within the meaning of § 1910.119(j)(1).  In its Compliance Guidelines and Recommendations for Process Safety Management, OSHA observes that "[e]quipment used to process, store, or handle highly hazardous chemicals needs to be designed, constructed, installed and maintained to minimize the risk of releases of such chemicals."  § 1910.119 App'x C (Feb. 8, 2013).  The preamble to the final PSM rule explains:

> [T]he goal of the mechanical integrity provisions is to ensure that highly hazardous chemicals covered by the standard are contained within the process and not released in an uncontrolled manner. The equipment OSHA has listed in proposed paragraph (j)(1) constitutes process equipment that the Agency considers critical in achieving this goal.

57 FR at 6389.  Section 1910.119(j)(1) lists six types of process equipment to which the mechanical integrity requirements apply:  pressure vessels and storage tanks; piping systems (including piping components such as valves); relief and vent systems and devices; emergency shutdown systems; controls

(including monitoring devices and sensors, alarms, and interlocks); and pumps.

The citation alleged that Jacobs failed to have written procedures, in violation of § 1910.119(j)(2), and failed to provide training, in violation of § 1910.119(j)(3), to maintain the on-going integrity of process equipment with regard to "separating the valve and actuator to repair the valves in the piping of the BEM Settlers." After hearing testimony on the issue from Ronald Wilson, Akzo's safety manager; Tony Cornwell, Jacobs's expert in chemical engineering and process safety management; and James Johnstone, the Secretary's expert, the ALJ agreed with the Secretary and found that § 1910.119(j)(2) and (3) "apply to the bracket and bolts used to mount the actuator to the valve bonnet." He therefore concluded that the cited standards applied to the cited condition.

Jacobs argues that the Secretary failed to establish that the mechanical integrity standards applied to Gonzalez's work on the actuated valves. It argues that the actuator is not covered process equipment. However, in making its argument, Jacobs misinterprets the regulation and misreads the ALJ's decision. Jacobs asserts that "to establish the applicability of subparagraphs (j)(2) and (j)(3), the Secretary must establish that the actuator is on the enumerated list of process equipment identified in paragraph (j)(1)." This is not strictly accurate; in fact, the Secretary must establish that Gonzalez was "involved in maintaining the on-going integrity of process equipment." § 1910.119(j)(3). And the regulatory definition of piping systems, one of the listed types of process equipment, is expressly open-ended: "piping systems (including piping components *such as* valves)." § 1910.119(j)(1)(ii) (emphasis added). As previously noted, the ALJ observed that "Jacobs's focus on the actuator as the component to which sections 1910.119(j)(2) and (3) apply is too

narrow," and concluded that the standard in fact applied to the actuator's mounting system.

Jacobs also attacks the ALJ's observation that "[t]he same bolts that hold the [valve] bonnet and valve together also connect the actuator to the valve." According to testimony at the hearing, the four bolts attaching the actuator to its bracket were distinct from the four bolts that attached the bracket, the valve, and the valve bonnet. Jacobs contends that the ALJ's suggestion otherwise is "a critical error of fact that contributed to the ALJ's erroneous conclusions of law." However, the ALJ's observation is not clearly inaccurate. The actuator bracket is designed to hold the actuator in place, and the bottom four bolts were necessary to hold the bracket to the valve. Furthermore, this finding is not critical to the ALJ's conclusion that the § 1910.119(j)(2) and (3) apply to the actuator's mounting system. The same bolts connect the bracket, the valve, and the valve bonnet, and removing the bracket would both remove the actuator and "break the line." And Johnstone testified that "the bracket is as much of the piping system as the bonnet is on the valve . . . it has to be there for that valve to work." The conclusion that the bracket and bolts used to mount the actuator to the valve bonnet are process equipment within the meaning of § 1910.199(j)(1) was thus not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Finally, Jacobs argues that the standard should not apply because Gonzalez went beyond his assigned task when he removed the bottom four bolts.[2] Jacobs contends that "[t]he release resulted when the employee went

---

[2] Jacobs's argument is based on the ALJ's dismissal of Item 2(b) on the grounds that "[t]he task assigned to the employee did not require the employee to cause a line break." But this observation was related to the conclusion that the Secretary failed to establish that Jacobs had actual or constructive knowledge of the need to use energy control procedures. The mechanical integrity standards do not apply only to situations in which a line break is

beyond the scope of troubleshooting the actuator, the task to which he was assigned, and attempted to remove the bottom four bolts securing the bracket to the valve." As a result, Jacobs argues, Gonzalez was not "involved in maintaining the on-going integrity of process equipment." § 1910.119(j)(3). But Jacobs admits that Gonzalez "was tasked with troubleshooting an actuator that may have required [him] to remove the actuator from the top of the bracket." His assignment therefore required him to work on the actuator's mounting system, which the ALJ fairly considered to be covered process equipment. And his alleged deviation from his assigned task, although disastrous, was understandable. When he could not remove the actuator from the bracket, he tried to remove the bracket from the valve; this would have been safe on an actuator mounted in the new style, the system with which Gonzalez had more experience. The fact that the accident occurred while Gonzalez was trying to fulfill his work order demonstrates that the Secretary's interpretation of the regulations and issuance of the citation "sensibly conform[ed] to the purpose and wording of the" standard. *CF&I Steel Corp.*, 499 U.S. at 150-52.

The definition of covered piping systems is open-ended: "piping systems (including piping components *such as* valves)." § 1910.119(j)(1)(ii) (emphasis added). Because one set of bolts connects the actuator bracket, the valve, and the valve bonnet, and because removing the bracket would "break the line," the ALJ's conclusion that the bracket and bolts used to mount the actuator to the valve bonnet are process equipment within the meaning of § 1910.119(j)(1) was not arbitrary, capricious, an abuse of discretion, or otherwise not in

---

*anticipated*, but rather where a line break is *possible*. *See Process Safety Management of Highly Hazardous Chemicals; Explosives and Blasting Agents* 57 FR at 6389.

accordance with law. Neither, consequently, was the ALJ's determination that §§ 1910.119(j)(2) and (3) applied to Jacobs.

C

To support a citation, the Secretary must show by a preponderance of the evidence that: (1) the OSHA standard invoked applies to the cited conditions; (2) the requirements of the standard were not met; (3) employees were exposed to or had access to the hazardous condition; and (4) the employer knew or should have known of the hazardous condition with the exercise of reasonable diligence. *Secretary of Labor v. Icarus Industrial Painting and Contracting Co.*, 19 O.S.H. Cas. (BNA) 2101, 2102 (2002). In its reply brief, Jacobs argues that the Secretary failed to carry his burden under *Icarus* because "Jacobs did not know, and could not have known through the exercise of reasonable diligence, that Mr. Gonzales would disassemble the valve while troubleshooting the actuator and thereby be exposed to hazard of a release." This argument was not raised before the Commission and was not addressed in Jacobs's opening brief. As a result, the argument is forfeited. 29 U.S.C. § 660(a); Fed. R. App. P. 28(a)(8)(A).

IV

In summary, we hold that the Commission's final order affirming violations of §§ 1910.119(j)(2) and (3) and assessing violations was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Jacob's petition for review is therefore DENIED.