# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 26, 2019

Lyle W. Cayce
Clerk

No. 19-60067

_____

EXCEL MODULAR SCAFFOLD & LEASING COMPANY, doing business as
Excel Scaffold & Leasing,

Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
EUGENE SCALIA, SECRETARY, U.S. DEPARTMENT OF LABOR,

Respondents

_____

Petition for Review of an Order of the
Occupational Safety and Health Review Commission

_____

Before WIENER, HIGGINSON, and HO, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

On September 12, 2016, an employee of Excel Modular Scaffold & Leasing Company ("Excel") was killed when a scaffold he was constructing collapsed into Galveston Bay in Texas City, Texas. In the aftermath of this tragedy, the Occupational Safety and Health Administration ("OSHA") conducted an investigation into the incident and issued Excel a number of safety citations. One of those citations charged Excel with a "serious" violation of 29 C.F.R. § 1926.106(d), a regulation which required Excel to ensure the presence of a "lifesaving skiff" at all jobsites where employees were required to work over water. Excel contested the issuance of the citation and the resulting

No. 19-60067

penalty, but it was upheld by an Administrative Law Judge ("ALJ"). The ALJ's decision became a final order when the Occupational Safety and Health Review Commission ("the Commission") declined to conduct further review. For the reasons explained below, we deny Excel's petition for review.

I.

Excel manufactures scaffolds and provides scaffold construction and dismantling services to companies in the refining industry. In 2015, Marathon Refinery hired Excel to build a series of scaffolds beneath three docks on Galveston Bay. The scaffolding system was comprised of "hanging scaffolds," which were constructed by attaching a horizontal bar to hanging vertical legs that were connected to I-beams under the docks. The project required Excel's employees to work both above and below the docks, and the water surrounding the docks was approximately eighteen feet deep.

On September 12, 2016, Luis Gonzalez was a member of an Excel crew working on the construction of a scaffold bay beneath one of Marathon's three docks. At the time, all crew members, including Gonzalez, were wearing safety harnesses with lanyards and personal flotation devices. While he worked, Gonzalez connected his lanyard to the vertical leg of one of the scaffold systems. As he attempted to attach the vertical leg to the existing scaffold bay, the leg became detached and fell into the water, dragging Gonzalez along with it. Two other members of the crew jumped into the water in an attempt to save Gonzalez, but they were unable to retrieve him. Tragically, by the time rescue personnel arrived, it was too late to save him, and Coast Guard divers recovered his body later that day.

After the incident, OSHA commenced an investigation into the fatality and the conditions at the jobsite. The Secretary of Labor ("the Secretary") issued Excel four safety citations. Only one of the citations is at issue in this

## No. 19-60067

appeal.[1] That citation charged Excel with a "serious" violation of 29 C.F.R. § 1926.106(d), which requires employers to ensure that "[a]t least one lifesaving skiff" is made "immediately available at locations where employees are working over or adjacent to water." *Id.* A lifesaving skiff is a small boat located close enough to a jobsite that it can attempt to rescue someone who falls into the water within three or four minutes. The Secretary classified Excel's violation of the regulation as "serious," and proposed that Excel pay a penalty of $12,675.

Excel contested the citation by submitting a Notice of Contest form along with an answer containing twenty-five affirmative defenses, including "impossibility/infeasibility of compliance." A two-day hearing was scheduled to begin on March 19, 2018 before an ALJ. A month before the hearing, the parties filed a joint Prehearing Statement with the ALJ. The Prehearing Statement stipulated that Excel violated the regulation requiring a skiff and informed the ALJ that the following two "issues of fact" were the only ones that "remain[ed] to be litigated" with respect to that citation:

> 1. Whether failing to have a lifesaving skiff immediately available exposed [Excel's] employees to a substantial probability of death or serious injury under the facts and circumstances of this case; and
> 2. Whether the proposed penalty is appropriate.

The Prehearing Statement made no reference to Excel's earlier contention that compliance with the regulation was either impossible or infeasible.

At the beginning of the hearing, the ALJ sought to further clarify the issues in dispute. She asked counsel for Excel to explain the nature of the company's stipulation regarding the lifesaving skiff citation. Excel's lawyer

---

[1] The other three citations were subsequently dismissed. The Secretary voluntarily withdrew two of the citations before the ALJ issued her decision, and one was dismissed by the ALJ in her order, which was affirmed by the Commission.

No. 19-60067

explained that the company stipulated that it "did not comply with the standard," but continued to "challenge the serious type of the violation classification." The ALJ asked once again whether Excel was "only challenging the classification," and Excel responded that it was challenging "[t]he classification and, of course, that goes along with that, the penalty amount." Throughout this exchange, Excel omitted any reference to the infeasibility or impossibility defense.

During the hearing, Excel introduced testimony from employees who explained that, given the layout of the docks at the Marathon Refinery, it would have been difficult for a boat to navigate under the dock where Gonzalez fell. The Secretary did not object to the introduction of this testimony.

After the hearing, the parties submitted post-hearing briefs. In Excel's brief, the company argued that the testimony introduced during the hearing established that compliance with the lifesaving skiff regulation "was infeasible because a skiff could not have been deployed and successfully navigated underneath Dock 34 to rescue Luis Gonzalez." Excel further argued that, in the event the ALJ disagreed with the company's defense, the citation's classification of the violation should be reduced to "other than serious."

The ALJ issued a decision and order on October 26, 2018. The order held that Excel had abandoned the defense of infeasibility by failing to preserve the defense in the parties' joint Prehearing Statement. As a result, the ALJ disregarded the section of Excel's post-hearing brief pertaining to the infeasibility defense. In the alternative, the ALJ held that the evidence submitted during the hearing failed to establish by a preponderance of the evidence that it would have been infeasible for Excel to comply with the lifesaving skiff regulation, in part because the evidence established that partial compliance with the regulation was possible. After reviewing the evidence

4

presented at the hearing, the ALJ concluded that Excel's violation of the citation was "serious," and imposed the Secretary's proposed penalty.

Excel filed a petition for discretionary review with the Commission on October 19, 2018. When the Commission declined to direct the case for review, the ALJ's order became the final order of the Commission on November 27, 2018. *See* 29 U.S.C. § 661(j); 29 C.F.R. § 220.90(d).

## II.

We have jurisdiction over this appeal under 29 U.S.C. § 660(a). Though the ALJ's order became final only when the Commission declined to conduct discretionary review, we apply the same standard of review to the final decision here as we would if the Commission had directly issued its own decision. *See MICA Corp. v. OSHRC*, 295 F.3d 447, 449 (5th Cir. 2002) (applying the same standard of review in such a situation). We review the ALJ's findings of fact under the substantial evidence standard. *Id.* We will affirm the ALJ's findings of fact as long as they are "supported by substantial evidence [in] the record considered as a whole even if this court could justifiably reach a different result de novo." *Id.* "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Chao v. OSHRC*, 401 F.3d 355, 362 (5th Cir. 2005) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)).

We will overturn the ALJ's legal conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a); *Chao*, 401 F.3d at 367. The ALJ's determination that Excel waived its affirmative defense of infeasibility is a legal conclusion that we review for an abuse of discretion. *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 487 n.1 (5th Cir. 2014).

No. 19-60067

III.

First, Excel argues that it was error for the ALJ to conclude that Excel waived the affirmative defense of infeasibility. Excel insists that it provided the Secretary with ample notice of the defense in its answer to the complaint, and argues that the testimony elicited during the hearing clearly established the company's intent to pursue the defense to contest the Secretary's issuance of the lifesaving skiff citation.

When presiding over a hearing involving a violation of a safety regulation, an ALJ is permitted to first conduct a prehearing conference with the parties to discuss "settlement, stipulation of facts, or any other matter that may expedite the hearing." 29 C.F.R. § 2200.51(b). The same regulation provides that the ALJ may utilize the "prehearing procedures set forth in Federal Rule of Civil Procedure 16," *id.*, which in turn permits a judge to schedule a pretrial conference to "formulate[] and simplify[] the issues, . . . eliminat[e] frivolous claims or defenses," and issue a pretrial order.[2] Fed. R. Civ. P. 16(c)–(d). A pretrial or prehearing order "controls the course of the trial." *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 n.13 (5th Cir. 1985). "Because of the importance of the pre-trial order in achieving efficacy and expeditiousness upon trial in the district court, appellate courts are hesitant to interfere with the court's discretion in creating, enforcing, and modifying such orders." *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982) (citations omitted).

---

[2] Though Federal Rule of Civil Procedure 16 uses the term "trial" instead of "hearing," the Commission has noted that "[t]he purpose of Rule 16 appears to be identical with that of Commission Rule 51." *Duquesne Light Co.*, 8 BNA OSHC 1218, at \*3 (No. 78-5034 1980). As such, the Commission refers to "trials" and "hearings" interchangeably, observing that "[p]rehearing procedures that aid in the early formulation of issues benefit all parties during trial preparation and result in the more efficient use of Commission resources at both the hearing and review stages." *Id.*

We have previously held that a party's failure to include an affirmative defense in a pretrial order constitutes a waiver of that defense—even if the defense was included in other pleadings. *See Flannery*, 676 F.2d at 129 ("If a claim or issue is omitted from the [pre-trial] order, it is waived." (citing cases)); *Pacific Indem. Co. v. Broward County*, 465 F.2d 99, 103–04 (5th Cir. 1972) ("The failure to indicate in the pre-trial order that an issue remains to be resolved at trial usually precludes the offer of proof on the issue at trial—to the detriment of the party who has the burden to prove the issue.") (citing *Shell v. Strong*, 151 F.2d 909 (10th Cir. 1945)). In this case, the joint Prehearing Statement that Excel and the Secretary submitted to the ALJ omitted any reference to Excel's affirmative defense of infeasibility. Though it is undisputed that Excel previously included this defense in its answer to the citation, "[i]t is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issue and evidence to be presented at trial." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996)).

On the first day of the hearing, the ALJ spoke with Excel's counsel in an effort to clarify the meaning of the parties' stipulations and the Prehearing Statement. This exchange provided Excel with an additional chance to explain that the company continued to pursue the affirmative defense of infeasibility, notwithstanding its failure to include the defense in the Prehearing Statement. Despite this opportunity, however, Excel failed to mention the infeasibility defense during the conversation, reporting to the ALJ that the *only* issues that remained to be litigated were the classification of the citation and the resulting penalty. "Each party has an affirmative duty to allege at the pretrial conference all factual and legal bases upon which the party wishes to litigate the case." *Trinity Carton*, 767 F.2d at 192 n.13. In light of Excel's repeated failure to preserve the affirmative defense of infeasibility, it was not an abuse

of discretion for the ALJ to conclude that Excel waived the defense. *See, e.g.*, *Flannery*, 676 F.2d at 129–30 ("Unless the court has abused its discretion, its rulings concerning the [pretrial] order will not be disturbed on appeal." (citation omitted)); *Hodges v. United States*, 597 F.2d 1014, 1017 (5th Cir. 1979).[3]

Excel acknowledges that it did not include the defense of infeasibility in its Prehearing Statement, but it argues that the Secretary implicitly consented to the defense by failing to object at the hearing to the introduction of testimony that was relevant to that defense. As a result, Excel argues that the Secretary could not have been prejudiced or surprised by Excel's attempt to pursue the infeasibility defense in its post-hearing brief. While it is true that parties may consent to trial of an issue that was not preserved, consent occurs "only when the parties squarely recognized that they were trying an issue not raised in the pleadings." *Armstrong Steel Erectors, Inc.*, 17 BNA OSHC 1385, at *2 (No. 92-262 1995) (citation omitted). More importantly, "[f]ailure to object to evidence relevant to the unpleaded issue" does *not* indicate consent "if the evidence is also relevant to a pleaded issue." *Id.* (citation omitted); *see also Int'l Harvester Credit Corp. v. E. Coast Truck*, 547 F.2d 888, 890 (5th Cir. 1977) ("[T]he introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the

---

[3] In its reply brief, Excel cites *Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249 (5th Cir. 2010), where we held that a trial court "not only has the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . . or where there is substantial evidence contrary to the stipulation." *Id.* at 262–63 (quoting *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1369 (5th Cir. 1983)). The ALJ's decision to hold Excel to its Prehearing Statement did not lead to manifest injustice. Above all, even if Excel had not waived the infeasibility defense, the evidence presented at the hearing would not have been sufficient to establish the company's entitlement to the defense. *See also Coastal States*, 649 F.3d at 1369–70 (declining to find an abuse of discretion where the court was unable to find "substantial evidence contradicting the stipulations").

party who introduced the evidence was attempting to raise a new issue." (citations omitted)).

Here, Excel points to testimony from the hearing suggesting that it would have been difficult to navigate a skiff beneath Marathon's docks. This same testimony, however, was also relied upon by Excel to support its argument that the citation's classification should be reduced to "other than serious." Because the proffered testimony was used by Excel to support its other claims, it was not an abuse of discretion for the ALJ to conclude that it would have been prejudicial to the Secretary to allow Excel to pursue the infeasibility defense.[4] *See Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) ("A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." (quoting *Bettes v. Stonewall Ins. Co.*, 480 F.2d 92 (5th Cir. 1973))).

## IV.

We also agree with the ALJ's alternative basis for dismissing Excel's infeasibility defense. In a footnote, the ALJ held that Excel had failed to establish by a preponderance of the evidence that it was infeasible for the company to comply with § 1926.106(d). Thus, even if Excel had not abandoned

---

[4] Excel also argues that the Secretary's failure to file a motion to strike Excel's affirmative defense of infeasibility demonstrated that the Secretary implicitly consented to Excel's reliance on the defense. Excel notes, by contrast, that the Secretary *did* move to strike the affirmative defense Excel advanced with respect to a different citation. This argument is misplaced, however. As the Secretary notes, the decision to "address a *different* affirmative defense as to a *separate* citation item is simply irrelevant to the question whether the Secretary knew that the infeasibility defense was at issue." Put differently, the fact that the ALJ chose not to infer from these arguments that the Secretary consented to the infeasibility defense was not an abuse of discretion. *Cf. Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979) ("The 'abuse of discretion' standard of review contemplates an area in which the district court can act either way, exercising its own discretion, without reversal.").

the infeasibility defense, the ALJ held that Excel had not met its burden of proving that it was entitled to the defense on the merits.

To prove infeasibility, an employer must show by a preponderance of the evidence that "(1) literal compliance with the terms of the cited standard was infeasible under the existing circumstances and (2) an alternative protective measure was used or there was no feasible alternative measure." *Westvaco Corp.*, 16 BNA OSHC 1374, at \*6 (No. 90-1341 1993). Because infeasibility is an affirmative defense, Excel bore the burden of producing sufficient evidence to meet each prong of the test. *See Ace Sheeting & Repair Co. v. OSHRC*, 555 F.2d 439, 441 (5th Cir. 1977); *A.J. McNulty & Co. v. Sec'y of Labor*, 283 F.3d 328, 334 (D.C. Cir. 2002) (holding that an employer must prove each prong of the test to establish the infeasibility defense).

An employer is not entitled to an infeasibility defense if it would have been possible to partially comply with the standard. *See Cleveland Consol. Inc. v. OSHRC*, 649 F.2d 1160, 1167 (5th Cir. 1981) (observing that OSHA "requires limited compliance where it furnishes some protection, even if exact compliance is not possible"); *Walker Towning Corp.*, 14 BNA OSHC 2072, at \*4 (No. 87-1359 1991) ("[E]ven when an employer cannot fully comply with the literal terms of a standard, it must nevertheless comply to the extent that compliance is feasible."). Excel presented evidence during the hearing to suggest it would have been difficult for a lifesaving skiff to navigate beneath Dock 34, but the evidence also suggested that a lifesaving skiff could have navigated around *other* areas of the same jobsite.[5] Even if this evidence

---

[5] Indeed, Excel itself acknowledges that "a skiff rescue might have been feasible at another location under different circumstances," but argues that that fact "does not defeat the defense's applicability." To the contrary, however, we endorsed the ALJ's view in *Peterson Bros. Steel Erection Co. v. Reich*, 26 F.3d 573 (5th Cir. 1994), where we held that it was not an abuse of discretion for the Commission to conclude that an employer was not entitled to

demonstrates that Excel could have only partially complied with the lifesaving-skiff regulation, the evidence established that limited compliance with the regulation could have provided protections to other members of the crew.[6] Therefore, the ALJ did not err in concluding that Excel's infeasibility defense failed on the merits.

## V.

Finally, Excel argues that the ALJ improperly affirmed the Secretary's classification of Excel's violation of the lifesaving skiff regulation as "serious." Under the Occupational Safety and Health Act, violations of a safety regulation are considered "serious" if "there is a substantial probability that death or serious physical harm could result." 29 U.S.C. § 666(k). "A violation may be determined to be serious where, although the accident itself is merely possible . . . there is a substantial probability of serious injury if it does occur." *E. Tex. Motor Freight, Inc. v. OSHRC*, 671 F.2d 845, 849 (5th Cir. 1982) (internal quotation marks omitted).

Excel's arguments for alteration of the classification rest on its insistence that the absence of a skiff was not a substantial cause of Gonzalez's death. This focus is misplaced. As the ALJ held, the purpose of OSHA's safety regulations is "preventative, not reactionary." *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 737 (5th Cir. 2016). Therefore, the question is not whether compliance with the standard would have prevented the *particular* tragedy here, but, instead, whether failure to comply with the regulation exposed employees to

---

an impossibility defense when the evidence established that it would have been feasible for the employer to partially comply with a regulation. *Id.* at 579.

[6] It is not immediately clear that Excel's proffered evidence demonstrates that complete compliance with the regulation was impossible. If anything, this evidence established that the lack of a skiff did not cause Gonzalez's death, not that Excel was unable to place a skiff near the jobsite.

accidents where there was "a substantial probability of death or serious injury." *See, e.g.*, *Boh Bros. Constr. Co.*, 24 BNA OSHC 1067, at *9 (No. 09-1072, 2013) (affirming issuance of a "serious" citation for violation of the lifesaving skiff standard where the absence of a skiff exposed employees "to water-related hazards such as hypothermia and drowning"). *Cf. Champlin Petroleum Co. v. OSHRC*, 593 F.2d 637, 642 (5th Cir. 1979) ("Because OSHA is designed to encourage abatement of hazardous conditions themselves . . . rather than to fix blame after the fact for a particular injury, a citation is supported by evidence which shows the preventability of the Generic hazard, if not this particular instance." (citation omitted)). Indeed, *Brennan v. OSHRC*, 494 F.2d 460 (8th Cir. 1974), a case upon which Excel relies, perfectly encapsulates this point, holding that the requisite inquiry focuses on "the general hazard" at issue, not the "foreseeability of the incident as it actually occurred." *Id.* at 463.

The ALJ's conclusion that the absence of a skiff exposed Excel's employees to a substantial probability of death or serious injury is amply supported by the record. For at least a year, Excel crew members worked at the Galveston Bay jobsite without a skiff. Excel crew members worked above and below the dock, using ladders to move between the areas of the scaffolding system. The top of the dock was thirty feet from the water, and the water around the docks was eighteen feet deep, with conditions ranging from calm to choppy. The ALJ also found that there was no evidence that it would have been difficult to navigate a skiff "if an employee fell from the dock or the ladder into an area of the water that was not underneath the dock"—a proposition Excel does not refute. Given these circumstances, there was substantial evidence to support the ALJ's conclusion that the absence of a skiff exposed Excel's employees to a substantial probability of death or serious injury.

No. 19-60067

VI.

For the foregoing reasons, the petition for review is DENIED.